**STATE of Maine**

**v.**

**Nelson SPEARIN.**

Supreme Judicial Court of Maine.

Argued March 3, 1981.

Decided April 10, 1981.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Francis M. Jackson, South Portland (orally), for defendant.

Before McKUSICK, C.J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and CARTER, JJ.

PER CURIAM.

After a jury trial, the defendant, Nelson Spearin, was convicted on two counts of theft by unauthorized taking or transfer. 17–A M.R.S.A. § 353 (Supp. 1980). On appeal, the defendant argues: 1) that the presiding justice erred in allowing the State to question the defendant about a prior conviction for cheating by false pretenses; and 2) that the presiding justice erred by adjudging the defendant guilty of Class C theft, rather than of Class D theft.

We affirm the judgment.

The following facts were undisputed at trial. On February 16, 1980, the defendant

paid Kennebeck Equipment Rental Company one day's rental for a welder and other tools. On the same day, the defendant approached Emery Lee and sold him these items for $700.00.[1] On February 18, the defendant paid Taylor Rental Company one day's rental for a wood splitter. The following day, February 19, the defendant sold the wood splitter to Jay McLaughlin for $300.00.[2] That evening, State Trooper Ronald Graves received an anonymous telephone call which informed him that Lee had purchased a stolen welder from the defendant. Trooper Graves investigated, and recovered all of the above described items.

The defendant testified that he told both Lee and McLaughlin that the items he sold to them were stolen[3] and that he placed the anonymous telephone call to Trooper Graves. The defendant alleged that in the past Lee had cheated him out of $750.00, and that McLaughlin had stolen wood from the defendant's cousin; by selling them the rented items and then informing the police, the defendant stated that he intended to "make up" for those past wrongs, insuring that the items would be returned to their rightful owners by the police and thus causing the loss to fall upon Lee and McLaughlin.

Upon cross-examination, the State received permission, over the defendant's objections, from the presiding justice to question the defendant about his 1975 conviction for cheating by false pretenses.

The defendant was convicted and sentenced to three years imprisonment.

## I.

The defendant first argues that in admitting evidence of the defendant's prior conviction, the presiding justice erred by failing to *specifically* state that the conviction's probative value with regard to the defendant's credibility outweighed its prejudicial effect to the defendant. We disagree.

▮ Admissibility of a prior conviction for impeachment of a witness is governed by M.R.Evid. 609(a).[4] Under the Rule, before such evidence is admitted, the trial court must determine that its probative value as establishing lack of veracity outweighs its prejudicial effect to the defendant. *State v. Pinkham*, Me., 383 A.2d 1355, 1357 (1978). However, there are no "magic words" which must be spoken by the presiding justice, nor is he expected, during a trial, to give a complete analysis of the factors involved in making the required determination. *Cf. State v. Poland*, Me., 426 A.2d 896, 900 (1981) (Trial judge not expected to give complete analysis of why he is excluding evidence under M.R.Evid. 403). It is sufficient that the record reveal that the determination was in fact made. We then examine the record to insure that the presiding justice neither misinterpreted M.R.Evid. 609(a), thereby applying an erroneous standard of law, nor abused his discretion in admitting or excluding evidence of a prior conviction.

▮ In the instant case, after noting that the defendant had already cast doubt upon his veracity by admitting that he had cheated Lee and McLaughlin, the presiding justice stated:

I think counsel know that ordinarily I don't allow impeachment except where the defendant is trying to take advantage of the situation or something and in this

---

1. Evidence was presented to show that the value of the welder at the time was around $1,200.

2. Evidence was presented to show that the value of the wood splitter at that time was approximately $1,700.

3. Lee and McLaughlin each testified that the defendant stated that he owned the items he sold.

4. M.R.Evid. 609(a) states:

For the purposes of attacking the credibility of a witness, evidence that he had been convicted of a crime is admissible but only if the crime (1) was punishable by death or imprisonment for one year or more under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment. In either case admissibility shall depend upon a determination by the court that the probative value of this evidence outweighs the prejudicial effect to the defendant.

case, it's so unusual that I think the probative value of this evidence outweighs any possible prejudicial effect.

There is no indication that the presiding justice misunderstood the standard which M.R.Evid. 609(a) required him to apply. He did not determine that the prior conviction was probative because of its tendency to persuade jurors that if the defendant "did it before he probably did so this time." *Pinkham*, 383 A.2d at 1358 *quoting Gordon v. United States*, 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967). The potentially negative impact of defendant's admissions at trial upon his veracity was correctly observed by the justice to lessen the danger of *prejudice* resulting from such tendency of the evidence. Therefore, the probative value *for impeachment purposes* outweighed any possible prejudicial effect. We are satisfied that the presiding justice applied the proper standard of balancing the probative value, as establishing lack of veracity, against the prior conviction's prejudicial effect to the defendant. *See Pinkham*, 383 A.2d at 1357.

■ We also find that the trial court did not abuse its discretion by admitting evidence of the prior conviction. The case most similar on its facts to the instant case, in which we found an abuse of discretion, is *State v. Roy*, Me., 385 A.2d 795 (1978). There, Roy was convicted of taking indecent liberties with the fifteen-and-a-half-year-old daughter of a woman with whom he had been living for several years. The State cross-examined Roy about a prior conviction for incest, during which the State elicited testimony that the incest conviction involved Roy's fifteen-year-old daughter and resulted in a three year prison sentence. In vacating the conviction, we noted that the crime of incest was similar to the crime charged, and did not involve dishonesty; thus its bearing on Roy's veracity was so tenuous that the jury was likely to have difficulty in focusing on the limited purpose for which the evidence was offered. That

difficulty was compounded by the State's improper probing into the factual details underlying the prior conviction. *Id.*, 385 A.2d at 798. *Roy* can be distinguished from the case before us. Here, the prior conviction for cheating by false pretenses has more than a minimal bearing on general credibility. *See State v. Gervais*, Me., 394 A.2d 1183, 1186 (1978). The State did not elicit testimony revealing prejudicial factual details underlying the prior conviction.[5] We further note that the defendant's credibility was the crucial issue for determining whether the State had proved the defendant's culpable state of mind. Finally, the presiding justice gave carefully stated limiting instructions to the jury on their use of the prior conviction as evidence. In these circumstances, we find no error in the presiding justice's actions. *Id.*, 394 A.2d at 1186–87; *accord, State v. Chubbuck*, Me., 406 A.2d 282, 283 (1979).

II.

■ The defendant next argues that the presiding justice erred by classifying his convictions as Class C crimes. Under the Maine Criminal Code, theft is a single crime which may be committed in several manners. 17–A M.R.S.A. § 351 (Supp.1980). Classification of theft convictions for sentencing purposes is governed by 17–A M.R.S.A. § 362 (Supp.1980), which reads in pertinent part:

3. Theft is a Class C crime if:

A. The value of the property ... is more than $1,000 but not more than $5,000; ....

4. Theft is a Class D crime if:

A. It is a violation of section 360, regardless of the value involved; ....

The defendant was convicted of theft by unauthorized taking or transfer (17–A M.R.S.A. § 353) of property valued at more than $1,000, but not more than $5,000. The defendant does not argue that there is insuffi-

5. The jury heard only the following testimony concerning the prior conviction:

Q. Mr. Spearin, you're the same Nelson Spearin who was convicted on the 28th day

of October 1975, Somerset County Superior Court, for cheating by false pretenses, is that correct?

A. Yes.

cient evidence to support those convictions; rather he contends that the evidence also supports theft convictions by the manner specified in 17–A M.R.S.A. § 360(1)(C). Therefore, regardless of the value of the property involved, for sentencing purposes the Court should have classified his offenses as Class D crimes.[6]

We find that the evidence in this case would not support a conviction under 17–A M.R.S.A. § 360(1)(C), which reads as follows:

Unauthorized use of property

1. A person is guilty of theft if:

. . .

C. Having custody of property pursuant to a rental or lease agreement with the owner thereof whereby such property is to be returned to the owner at a specified time and place, he knowingly fails to comply with the agreed terms concerning return of such property without the consent of the owner, for so lengthy a period beyond the specified time for return as to render his retention or possession or other failure to return a gross deviation from the agreement.

The evil at which this statute is aimed appears to be the knowing failure to return in a timely manner rented property *of which the defendant has custody*. The language of the statute supports this interpretation: the "having custody of property" clause modifies "he knowingly fails to comply with the agreed terms concerning return of such property . . ., for so lengthy a period beyond the specified time for return as to render his retention or possession or other failure to return a gross deviation from the agreement." We read this as requiring the defendant to have custody of the property during the lengthy period of time in which he knowingly fails to comply with the agreed terms concerning return. This interpretation is consistent with subsections A and B of § 360(1). Those sections deal with joyriding and with unauthorized personal use of a vehicle by a per-

son hired to maintain, repair or use the vehicle. In all three subsections, the unlawful conduct relates to unauthorized use of property within the defendant's custody.

Further support can be found in 17–A M.R.S.A. § 362. The major element in sentence classification for theft is the value of the property or services taken. But with regard to § 360, the emphasis is clearly upon the manner in which the theft occurs; the conduct described in § 360 is singled out for special treatment regardless of the value of the property taken.

In the instant case, the defendant did not have custody of the rental property for a lengthy period beyond the time for return. He sold the welder to Lee *before* the time for its return, and he sold the wood splitter to McLaughlin just one day after the time for its return. The defendant did not violate 17–A M.R.S.A. § 360; therefore the presiding justice did not err in classifying the defendant's convictions as Class C crimes.

The entry is:

Judgments of conviction affirmed.

All concurring.

---

**6.** The maximum prison sentence for a Class D crime is less than one year. 17–A M.R.S.A. § 1252(2)(D).