**STATE of Maine**

v.

**Vincent HALLOWELL.**

Supreme Judicial Court of Maine.

Argued June 12, 1990.

Decided July 13, 1990.

David W. Crook, Dist. Atty., Alan P. Kelley (orally), Deputy Dist. Atty., Augusta, for plaintiff.

John D. Pelletier (orally), Goodspeed & O'Donnell, Augusta, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

In this case, acting under a recently enacted statute, the full Law Court for the first time reviews the propriety of the criminal sentences imposed by the trial court. Defendant Vincent Hallowell appeals from both the judgments and the sentences entered by the Superior Court (Kennebec County, *Brody, C.J.*) on his convictions by a jury of possession of a firearm by a felon, 15 M.R.S.A. § 393 (1980 and Supp. 1989), and criminal threatening with a dangerous weapon, 17–A M.R.S.A. § 209

(1983).[1]  Defendant argues on appeal that the court committed an evidentiary error in ruling on the admissibility of his prior convictions for purposes of impeachment and he argues that the sentences of incarceration are excessive in length. Finding no error, we affirm.[2]

Prior to a joint trial on both charges, defendant moved to exclude from the indictment and the evidence any description of his prior felony convictions for gross sexual misconduct, unlawful sexual contact, and aggravated assault. The State and defendant stipulated that he had a felony record and the court granted the motion to the extent that when the indictment was read to the jury, the jury was simply informed, without further specification, that defendant had been convicted of felonies.

At trial, during cross-examination of the alleged victim of the criminal threatening, defendant's attorney informed the court at a side-bar conference that he wanted to impeach the witness by introducing the witness's prior convictions for unlawful sexual contact and gross sexual misconduct. Counsel for the State responded, somewhat illogically, that such a use of the witness's prior convictions would open the door to using defendant's own convictions for impeachment should he testify.[3] The court allowed defense counsel to impeach the witness and stated: "[b]y the same token, I'm not going to prevent the State if the defendant does take the stand from inquiring for purposes of credibility what his prior record was." Defense counsel used the witness's prior convictions for impeachment but defendant did not testify. The jury returned a guilty verdict on both counts.

Initially, the court sentenced defendant to four years incarceration on the criminal threatening count and a consecutive four year suspended sentence with four years of probation for the possession count. Defendant objected to the consecutive sentence on the ground that under 17–A M.R.S.A. § 1256 (Supp.1983) the possession of a firearm was included in the criminal threatening with a dangerous weapon count. He appealed his sentences on both counts to the Appellate Division.[4] One month later, and presumably acting pursuant to M.R. Crim.P. 35(a), the Superior Court on its own motion resentenced defendant on the criminal threatening count to five years incarceration, with all but four suspended, and four years probation. On the possession count, the court ordered a four-year concurrent sentence.

Defendant appealed from his convictions and, following his resentencing, he also filed an application with the Law Court for leave to appeal from his sentences.[5]

## I.

Defendant contends that the parties and court agreed that the nature of his convictions would not be revealed to the jury and that the court "changed the ground rules" when it ruled that his use of prior convictions to impeach a witness would entitle the State to introduce evidence of his prior

---

1. The Class D offense of criminal threatening is enhanced to a Class C offense if committed "with the use of a dangerous weapon." 17–A M.R.S.A. § 1252(4) (1983).

2. Defendant also argued that the charge of possessing a firearm violated his right to bear a firearm under Me. Const. art. I, § 16. His argument in this regard is disposed of by our recent ruling in *State v. Brown*, 571 A.2d 816 (Me. 1990).

3. Presumably the prosecutor was struck by the fact that defendant had been convicted of the *same offenses*.

4. At the time of defendant's first sentencing, the Appellate Division of the Supreme Judicial Court heard appeals from sentences pursuant to 15 M.R.S.A. §§ 2141–2144 (1980).

5. After defendant was sentenced and before he was resentenced, the Maine Legislature repealed the existing provision for sentence appeal to the Appellate Division and enacted a new provision for a discretionary appeal directly to the Law Court. *See* P.L.1989, ch. 218 (effective Sept. 30, 1989). The statute now applicable to defendant's appeal is set forth at 15 M.R.S.A. §§ 2151–2157 (Supp.1989). The Sentence Review Panel of this court granted defendant's application for leave to appeal from sentence pursuant to 15 M.R.S.A. §§ 2152. The procedure for sentence appeal is now set forth in M.R.Crim.P. 40, 40A, 40B and 40C.

convictions for impeachment purposes should he take the witness stand. Defendant further contends that the court's ruling violated M.R.Evid. 609(a) and chilled the exercise of his constitutional right to testify in his own behalf.

■ There is no basis in the record for defendant's contention that the court "changed the ground rules" regarding the use of the prior convictions during trial. His motion to exclude pertained only to the reading of the indictment and the hearing on that motion contains no discussion of the use of defendant's prior convictions during trial. For the first time on appeal, defendant contends that the court's ruling violated M.R.Evid. 609(a). The decision to admit prior convictions for impeachment purposes rests in the sound discretion of the trial judge. *See State v. Pottios*, 564 A.2d 64, 65 (Me.1989); *State v. Spearin*, 428 A.2d 381, 382 (Me.1981). Defendant has demonstrated no error in the court's ruling.

■ Defendant also argues that in balancing prejudice against probative value, the court failed to take into account the chilling effect the admission of prior convictions would have on defendant's willingness to testify. We have previously addressed a similar argument in *State v. Pottios*, 564 A.2d at 65. Here, as in *Pottios*, defendant made no offer of proof as to the substance of his testimony. It was his burden to demonstrate to the court the value of his own testimony so that the court could take that factor into account in the balancing process under M.R.Evid. 609(a). *Id.* at 65 (citing *State v. Rowe*, 397 A.2d 558, 560–61 (Me.1979)). Having failed to make an offer of proof or otherwise to preserve an objection on this appeal, defendant is left with the contention of obvious error. There is no obvious error in the court's ruling that defendant's prior convictions could be used for impeachment purposes against him should he choose to testify. *See State v. Hanscome*, 459 A.2d 569, 572 (Me.1983).

## II.

■ Defendant argues that the sentences he received are excessive in length and fail to provide an incentive for rehabilitation. In deciding challenges to the propriety of sentences, we are specifically directed to consider the "nature of the offense, the character of the offender and the protection of the public interest." 15 M.R. S.A. § 2155(1). The facts presented at trial and at the time of sentencing regarding the nature of the offenses may be summarized as follows: In the evening hours of January 5, 1989, defendant walked into the room of the manager of the boarding house in which he lived. The manager testified that defendant was drinking and that he had been having some "rent problems." Defendant pulled a revolver from his rear pocket and pointed it at the manager. Defendant informed him that he was "tired of your f_____ s____." When he was told to put the gun away or use it, defendant cocked the hammer and spun the cylinder revealing live ammunition. The manager attempted to call the police but defendant took the phone from him. Finally, the manager pretended that he was going to a store and slipped out of the building. He observed defendant leave the building and stop to fire two shots into a snow bank in the parking lot. The police were called and they located defendant in a neighboring apartment. He was very drunk and belligerent and denied threatening the manager. The police found no gun and left. Shortly thereafter, they received a call from the manager who informed them that defendant had twice telephoned and threatened him again. The police returned and arrested defendant. Defendant subsequently told the police that he had no gun, had used a cap gun and a "stick gun" made from a ballpoint pen, and that he had thrown the gun in the river. The gun was never found.

The background and circumstances of defendant as presented at sentencing may be summarized as follows: Defendant, a 37 year old unemployed carpenter, grew up on a dairy farm outside Augusta and dropped out of high school before graduating. He has been twice married and twice divorced.

He had one child by his first wife and he consented to that child's adoption. He has had substantial problems with substance abuse since he was sixteen and continues to suffer from alcoholism. He served in VietNam and makes some claim to post-traumatic stress disorder but has never pursued evaluation or treatment. His criminal record is extensive, including felony convictions of arson, gross sexual misconduct, unlawful sexual contact, aggravated assault, and misdemeanor convictions of theft, assault, child endangerment, criminal trespass, criminal threatening, and false public report. His probation report states that he "has a long history of alcoholism and assaultive behavior while being intoxicated ... unless he changes his attitudes and drinking habits, Mr. Hallowell will likely continue to cause further physical damage to himself, and also pose a risk of injury to others." Defendant has been unable to hold a job because of his alcoholism and has previously served a three year sentence for arson in Florida and has served a total of four years in the Maine State Prison.

We review the sentences imposed against the facts presented to the sentencing justice. Defendant was convicted of the Class C offense of criminal threatening with a dangerous weapon. For that offense he received a sentence of five years, with all but four years of that sentence suspended, and he was placed on probation for a term of four years. On the companion charge of possession of a firearm by a felon, Class C, defendant received a concurrent sentence of four years in prison. Both offenses have a maximum sentence of five years. Defendant argues that the sentences are excessive in light of the nature of his offenses. Defendant also argues that because lengthy periods of incarceration have failed to resolve his alcohol abuse in the past, he should have been given a longer suspended term, with less incarceration initially, in order to maximize his incentive to complete alcohol counseling and rehabilitation. We reject both arguments.

The standard for our review may be described as an examination of sentences for misapplication of principle. It is not enough that the members of this court might have passed a different sentence, rather it is only when a sentence appears to err in principle that we will alter it. *See generally* Wathen, *Disparity and the Need for Sentencing Guidelines in Maine: A Proposal for Enhanced Appellate Review,* 40 Me.L.Rev. 1 (1988). Criminal conduct, even that which falls within the same statutory definition, does not necessarily present a uniform risk of harm. The same generic offense may be committed in any number of ways and varying degrees of seriousness may be involved. The maximum sentence in a given case should, in the first instance, be determined by a consideration of the particular nature and seriousness of the offense rather than by a consideration of the circumstances of the offender. The conduct involved in the commission of the offenses in the present case is relatively serious. Defendant displayed a loaded firearm [6] in a threatening manner without provocation, he discharged the firearm, he breached the security of the victim's home, and he did all of this while in a drunken condition. If we were to rank all of the possible means of committing the offenses on a scale reflecting degrees of seriousness, defendant's conduct would cause his offenses to rank high on that scale. A sentence in the upper quadrant of the sentencing range provided for Class C offenses is justified and defendant has failed to demonstrate any misapplication of sentencing principle.

Defendant also challenges the court's failure to impose lesser sentences in order to encourage rehabilitation. The degree of mitigation called for by the circumstances of the offender is, in the first instance, a matter for the sentencing judge. Any mitigating circumstances presented in this case are more than offset by aggravating cir-

6. A firearm need not be loaded in order to constitute a "dangerous weapon." 17–A M.R. S.A. § 2(9)(A) and (12–A) (1983).

cumstances. The court was free to reject defendant's suggested strategy for rehabilitating a chronic offender and committed no error in refusing to impose a sentence involving more probation and less incarceration. Because of the serious nature of defendant's conduct and the manner in which he committed these offenses, we conclude that the sentences are appropriate.

The entry is:

Judgments affirmed.

All concurring.