STATE of Maine

v.

Adam R. WEIR.

Supreme Judicial Court of Maine.

Argued Oct. 29, 1991.

Decided Dec. 26, 1991.

David W. Crook, Dist. Atty., William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for the State.

Stephen Grygiel, Michael Ambler (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Adam R. Weir appeals his sentence of twenty years' imprisonment, with all but nine years suspended and eight years' probation, entered by the Superior Court (Somerset County, *Smith, J.*) on Weir's plea of guilty to two counts of armed robbery.[1] 17–A M.R.S.A. § 651 (Class A) (1983). Weir contends that the unsuspended portion of his sentence is excessive on the grounds that the court underemphasized mitigating factors and overemphasized aggravating factors. In addition, Weir contends that his sentence was excessive in relation to the prison sentences of his co-defendants. We reject both arguments and affirm the sentence.

In the fall of 1989, while still a juvenile, Weir began a series of criminal activities that started as minor thefts and escalated to burglary and armed robbery committed with a firearm. After his arrest, Weir cooperated with the police and was released on bail. While out on bail, Weir committed a second armed robbery. Weir, who had no previous criminal record, pleaded guilty to all counts against him. A plea agreement recommended a twenty-year sentence with all but ten suspended, a period of eight years probation, for the armed robberies, with Weir being free to argue for less prison time. The court sentenced Weir to twenty years' imprisonment, with all but nine years suspended and eight years' probation for the armed robberies. The sentences imposed on the other convictions are to be served concurrently. On appeal Weir does not challenge the basic twenty-year sentence, rather, he challenges only the nine-year term of incarceration.

■ When imposing a sentence "the court must first determine a basic sentence by considering the particular nature and seriousness of the offense, without regard to the circumstances of the offender." *State v. Lewis,* 590 A.2d 149, 150 (Me.1991) (citing *State v. Hallowell,* 577 A.2d 778, 781 (Me.1990)). Only after this first step should the court apply its discretion to determine the degree of mitigation called for by the circumstances of the offender and the degree of aggravation indicated by specific factors demonstrating a high risk of re-offending. A sentencing court has wide discretion in selecting sources of mitigating circumstances and aggravating factors, provided they are factually reliable. *State v. Rosa,* 575 A.2d 727, 730 (Me.1990). In addition, we accord the sentencing court great deference in weighing these factors in order that it may appropriately individualize each sentence.

■ In this case the record reflects that the court considered as aggravating factors that the second armed robbery was committed while Weir was free on bail, and that the entire crime spree occurred while he was receiving the help of psychotherapy. Contrary to Weir's suggestion, the court also considered the mitigating factors of his youth, his family and medical history, and his prospects for rehabilitation. We conclude that the court adequately considered these factors in the process of selecting the unsuspended portion of the sentence.

---

1. Weir does not challenge concurrent sentences imposed on his pleas of guilty to twelve counts of burglary, seven counts of theft, one count of forgery and one count of aggravated criminal mischief.

Weir also argues that the unsuspended portion of his sentence was excessive in relation to that of his co-defendants. The record does not reflect, and Weir has not provided, any specific information regarding the crimes for which his co-defendants were convicted, or the nature of any prior criminal convictions his co-defendants may have had. Although the unsuspended portion of Weir's sentence was longer than any of his co-defendants, Weir was the only one who committed another armed robbery while free on bail. It is not apparent from the record that the disparity between the unsuspended portion of the sentences is beyond the discretion of the sentencing court.

The entry is:

Sentence affirmed.

GLASSMAN, CLIFFORD and COLLINS, JJ., concurring.

WATHEN, Justice, dissenting.

I must respectfully dissent. By its opinion in this case, the court takes no cognizance of the fact that the information presented to the sentencing justice concerning the basis for the plea bargain and the State's recommended sentence was less than complete. I would vacate and remand to the Superior Court for reconsideration of defendant's sentence in light of the disclosure that the sentence recommended by the State was premised in part on the fact that defendant was the last among his group to strike a bargain with the prosecutor. Given only the nature of the crimes committed by Adam Weir, one would hesitate to suggest that he did not earn the twenty-year sentence he received. When the unique personal circumstances of Adam Weir are considered, however, I question whether the sentence imposed reflects humane and sensitive consideration of the plight of a deeply troubled youthful offender. I also question whether it is proportionate to the sentences imposed on his cohorts. In the long run, I believe that the sentence may serve neither to protect the public nor to satisfy the ends of justice.

Adam Weir turned eighteen years old on October 4, 1989. About fifteen days before his birthday, he, along with three other young men, began a one-month crime spree that involved him in two armed robberies, twelve burglaries and thefts, a forgery, and an aggravated mischief. Some of the offenses took place in his own community of Skowhegan while others occurred in surrounding towns. He committed the last armed robbery after he had already been arrested on some of the other charges and had given the State information about his involvement and the involvement of his friends. Admittedly the three other participants in the crime spree did not participate in every one of defendant's crimes and none were involved in his last armed robbery, but all three were sentenced more leniently than defendant despite the fact that two of them had committed other crimes and the record suggests that they had prior criminal records.

Defendant's circumstances, as documented by an extensive presentence investigation and a number of psychological evaluations, reveal a childhood and adolescence marked by a series of traumatic events. Adam's father, a clergyman, was convicted of sexually molesting Adam's best friend. Adam's mother engaged in a much-publicized lesbian relationship with a local minister. His parents' marriage ended in divorce. At age twelve Adam was diagnosed with Hodgkins lymphoma for which he received radiation treatment and chemotherapy, and also underwent surgery to remove his spleen and intestinal lymph glands. Shortly thereafter, he experienced a life-threatening infection. By the time he returned to school, he wore a wig, his weight had dropped from 200 pounds to 98 pounds, and he remained susceptible to infection and disease. He was placed in a nonacademic 'functional' curriculum, he changed his circle of friends, his scholastic performance plummeted, and he began to use drugs and alcohol. At age seven, Adam had an extrapolated full scale IQ of 150 (genius level); after his illness, his IQ had dropped to 93, a result that the presentence report ascribes to "his traumatic experience with cancer, his father's conviction and his mother's desertion." At sentenc-

ing, the psychological evaluations revealed that Adam suffered from Post–Traumatic Stress Syndrome. Test results in February 1988 showed he was then suffering from chronic depression, significant emotional repression, and over-control, requiring, at a minimum, ongoing intensive psychotherapy if not inpatient therapy.

The plea agreement in this case was described by the prosecutor as follows: "a twenty-year sentence all but ten years to be suspended, a period of probation of eight years, with the defense being free to argue for less than the ten-year sentence in jail, so that's a cap." Once the plea agreement was accepted for the most serious offense of armed robbery, the sentencing justice was free to choose between the State's recommendation of ten years' unsuspended incarceration and the mandatory minimum sentence of four years. *See* 17–A M.R.S.A. § 1252(5) (1983). The justice was informed by the State that defendant's cohorts received a more favorable recommendation and sentence because they were less culpable, despite the fact that two of the others had committed and pleaded guilty to a separate armed robbery in which defendant did not participate, and it was suggested that both had prior criminal records. One of those two cohorts had actually committed a greater number of offenses in the crime spree at issue than had defendant. In a written submission to the sentencing justice, defendant asserted that the prosecutor's recommendation was based on the order in which the four defendants agreed to cooperate rather than the degree of culpability, i.e., the first received a recommendation of four years, the second six, the third eight, and defendant ten. The sentencing justice made no inquiry concerning the basis of the State's recommendation. During oral argument before us, however, the State's attorney acknowledged candidly that the order in which the defendants agreed to cooperate did play a role in determining the recommendation. Ultimately, the sentencing justice accepted the recommended maximum sentence, reducing the unsuspended time to nine years in recognition of the fact that defendant would not receive any good time credit for the period of more than one year spent in county jail pending resolution of his case.

We are directed to review the manner in which a sentence is imposed, "including the sufficiency and accuracy of the information on which it was based." 15 M.R.S.A. § 2155(2) (Supp.1990). Here the sentencing justice was not informed of the complete basis for the State's recommendation. I do not suggest that the information was withheld by design, nor do I suggest that the State's attorney is not free to base a recommendation for a sentence on strategic considerations. Our rules require, however, that the actual and complete basis for the recommendation be accurately set forth on the record. M.R.Crim.P. 11A(c). Given defendant's unusual and compelling circumstances, it is conceivable that the sentence in this case might have been different had the court been fully informed. Nowhere in the law is the need for truth and accuracy more critical than in the sensitive and important task of sentencing. I would remand for resentencing.