**STATE of Maine**

v.

**Alden HEWEY.**

Supreme Judicial Court of Maine.

Argued Feb. 1, 1993.
Decided March 24, 1993.

---

David W. Crook, Dist. Atty., Alan P. Kelley (orally), Asst. Dist. Atty., Augusta, for the State.

Claudia C. Sharon (orally), Sharon & Oreskovich, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

Alden Hewey appeals from the judgment of conviction entered in the Superior Court (Kennebec County, *Alexander, J.*) on a jury verdict finding him guilty of robbery, 17–A M.R.S.A. § 651(1)(C) (1983)[1] and from the sentence imposed by the court. He contends the trial court erred in denying his motion to suppress from evidence his statement made to the police and in the imposition of a 30–year sentence. We affirm the judgment of conviction but find the sentence imposed by the court results from an error in principle. Accordingly, we vacate the imposed sentence and remand this case to the Superior Court for the resentencing of Hewey.

The record discloses that at approximately 1:15 a.m. on October 3, 1989, Christopher Cote while driving home from a social visit suddenly felt ill and pulled off the interstate into a rest area in Augusta. Returning from a restroom at the stop, Cote noticed a stranger, later identified as Hewey, walking toward his car. Feeling threatened, Cote reentered his car. Hewey entered Cote's vehicle on the passenger side, pinned Cote against the inside of the driver's side door with his forearm and demanded money, while searching Cote's pockets. Hewey took approximately $55 from Cote's front pant pocket and left the car, instructing Cote not to observe his movements. Cote telephoned the police and gave them the license plate number of a truck that he suspected was that of his assailant. Cote then visited the police station, identified Hewey in a photographic line-up and at approximately 3:00 a.m. accompanied the police to Hewey's home. Hewey's truck parked outside the residence matched the description given by Cote. The hood of the truck was still warm. Hewey complied with the initial requests of the police to come outside and identify himself and responded to their query of his whereabouts that evening by stating he had been at home. The police then arrested Hewey for the robbery of Cote. Before leaving the premises, Hewey was allowed to speak with his girlfriend. The police overheard him tell her that he had been at the Bob Inn in Waterville until 1:00 a.m. that morning and had witnesses "who would get him out of the charges." On the

---

1. 17–A M.R.S.A. § 651(1)(C) provides:
 1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:
 ....
 B. He threatens to use force against any person present with the intent
 (1) to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or
 (2) to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;
 C. He uses physical force on another with the intent enumerated in paragraph B, subparagraphs (1) or (2)....

way to the police station, Hewey asked the arresting officer why the officer did not believe his story.

After a hearing, the court denied Hewey's pretrial motion to suppress these three statements from evidence at the trial of the present case. Following a jury trial finding Hewey guilty of robbery and receipt of a presentence investigation report, the trial court sentenced Hewey to the custody of the Department of Corrections for a period of 30 years with all but 25 years suspended and a period of probation for six years. The Sentence Review Panel of the Supreme Judicial Court granted Hewey leave to appeal his sentence, *see* 15 M.R.S.A. §§ 2151–2157 (Supp.1992), and this appeal followed.

 On this appeal, Hewey confines his challenge to the trial court's denial of his motion to suppress Hewey's statement to the investigating officer that he had been home throughout the period preceding and following the robbery. He argues that because the statement was made without the benefit of warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the trial court erred in its ruling. We disagree.

 *Miranda* warnings are mandated only when a suspect is both in custody and subjected to interrogation. *See State v. Pinkham*, 556 A.2d 658, 659 (Me.1989). "[T]he trial court's finding of no custodial interrogation will be upheld if the record provides rational support for that determination." *Id.* Here, the court rationally could have found that Hewey voluntarily went outside his home to meet with the police officer and knew he was free to leave at any time. The court appropriately determined "that a reasonable person in [Hewey's] position would not have believed that he was being restrained to the degree associated with a formal arrest." *Id.* Accordingly, the court properly denied Hewey's motion to suppress the statement at issue.

We agree with Hewey's second contention. In so doing, and prior to addressing the issue presented by the present case, we use this opportunity for clarification of our review of an appeal from a sentence imposed by the trial court. We are cognizant that in our previous opinions there has been some inconsistency in the terminology used to define each of the three steps we deem necessary to be followed by the trial court to achieve a greater uniformity in the sentencing process and to enable us to apply the correct standard of review to each of those steps. *See* 15 M.R.S.A. § 2155 (Supp.1992).

We do not here describe in detail the purposes of criminal sanctions or the multiple factors the trial court may consider. Rather, we describe a sentencing process by which the significant purposes and relevant factors may be articulated by the trial court in an individual case.

 In the sentencing process, the trial court must first determine a basic period of incarceration. That determination is made *solely* by reference to the offender's *criminal conduct* in committing the crime, that is, "by considering the particular nature and seriousness of the offense without regard to the circumstances of the offender." *State v. Weir,* 600 A.2d 1105, 1106 (Me. 1991).

 "[I]n order that [the court] may appropriately individualize each sentence," *id.,* the court must thereafter consider *those factors peculiar to that offender.* For example, mitigating factors, that may include the favorable prospect of rehabilitation of the offender, demonstrate the offender's low probability of re-offense and, thus, justify a diminution of the basic period of incarceration; aggravating factors demonstrate a high probability of re-offense and, in order to protect the public, justify enhancing the basic period of incarceration. In determining the appropriate degree of mitigation or aggravation of an offender's basic period of incarceration the court may consider any evidence that is factually reliable and relevant. *Id.* By this means the trial court determines the *maximum* period of incarceration as a second step in the sentencing process. Clearly, if the maximum period of incarceration determined by the trial court exceeds the statutory limit for that offense, it would be

an error in principle. In that regard, it is well established that there are two limits within which an offender's maximum period of incarceration may fall for the commission of a Class A offense: the "original" limit is 20 years as the maximum period of incarceration, and the "extended" limit is 40 years. 17–A M.R.S.A. § 1252(2)(A) (1983 & Supp.1992).[2] Of all Class A offenses, only the "most heinous and violent crimes committed against a person" are punishable by a maximum period of incarceration above the "original" limit. *State v. Lewis,* 590 A.2d 149, 151 (Me.1991).

Once the trial court has determined the *maximum* period of incarceration, as a third and last step, the court may suspend a portion of the period of *maximum* incarceration when, for example, the court determines that society will better be protected by affording a period of supervised probation of an offender. Accordingly, the *maximum* period of incarceration and the stated portion of that period, if any, suspended for placement of the offender on supervised probation, becomes the *final sentence* imposed by the court on the offender.

We review the trial court's determination of the offender's *basic* period of incarceration for misapplication of principle. *See State v. Hallowell,* 577 A.2d 778, 781 (Me.1990) ("It is not enough that the members of this court might have passed a different sentence, rather it is only when a sentence appears to err in principle that we will alter it."). However, recognizing the trial court's superior posture for evaluating evidence of the circumstances of the offender, we accord greater deference to the weight and effect given by the court to those factors peculiar to a particular offender in its determination of the offender's *maximum* period of incarceration. This greater deference is also accorded the court's determination whether to suspend any portion of that maximum period in arriving at the *final* sentence imposed on the offender by the court.

Because of the two different standards applicable in our review of the sentencing process, the desirability of a clear articulation by the trial court of its compliance with the three-step procedure becomes apparent. This articulation will aid us not only in distinguishing and applying the appropriate standard of appellate review,— i.e., the misapplication of principle standard to a trial court's determination of the *basic* period of incarceration and a standard of considerable deference to its determinations of the *maximum* period of incarceration and the *final* sentence—but it will also facilitate a greater degree of uniformity in the sentencing process.

Applying these principles to the present case, we note the following: Hewey's conduct constituted a Class A offense against the person, involved the use of physical force, and inflicted a substantial degree of psychological damage on the victim. However, Hewey was not armed with a dangerous or deadly weapon, the duration of the use of physical force was brief and the victim was not physically injured. The amount of money taken was less than $60. Considering these factors, it cannot be said that this offense was one of "the most heinous and violent crimes committed against a person." *State v. Lewis,* 590 A.2d at 151. Accordingly, the "original" Class A sentencing limit of 20 years as a *maximum* period of incarceration was applicable, and it was an error in principle for the trial court to impose on Hewey a maximum period of incarceration of 30 years.

The entry is:

Judgment of conviction affirmed.

Sentence is vacated. Remanded to the Superior Court for resentencing consistent with the opinion herein.

All concurring.

---

**2.** 17–A M.R.S.A. § 1252(2)(A) provides:

2. The court shall set the term of imprisonment as follows:

A. In the case of a class A Crime, the court shall set a definite period not to exceed 40 years;