STATE of Maine

v.

**Douglas A. DeWALT.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 19, 1996.

Decided Sept. 24, 1996.

Geoffrey Rushlau, District Attorney, Patricia A. Mador, Assistant District Attorney, Rockland, ME, for State.

William S. Maddox, Rockland, ME, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Douglas DeWalt appeals from the sentences imposed on him following the judg-

ments of conviction entered in the Superior Court (Knox County, *Atwood, J.*) pursuant to his pleas of guilty to two counts of burglary, 17–A M.R.S.A. § 401 (1983 & Supp.1995) (Class B), two counts of theft, 17–A M.R.S.A. § 353 (1983) (Class E), one count of violation of a condition of release, 15 M.R.S.A. § 1092 (Supp.1995) (Class E), and plea of *nolo contendere* to one count of assault, 17–A M.R.S.A. § 207 (1983 & Supp.1995) (Class D). We affirm the sentences.

At the M.R.Crim.P. 11 hearing at which DeWalt made the above pleas, the State provided the following factual basis for the charges: On October 11, 1994, at 1:45 a.m. and November 23, 1994, at 3:24 a.m., respectively, DeWalt burglarized the homes of Peggy Delange and Mary Foote. In the Delange burglary, DeWalt gained entrance to the residence by cutting a hole in a screen door and, once inside, he took a wallet and a carton of cigarettes. While DeWalt was inside the residence, Ms. Delange discovered him and, along with her two children, immediately left the home. DeWalt made no attempt to injure or pursue Delange or the children.

In the Foote burglary, DeWalt gained entrance to the residence through an unlocked door and took $1.00 in cash and a few packs of cigarettes. While inside the residence, DeWalt approached Ms. Foote, who was lying asleep on a downstairs couch, and began touching her legs and feet. When Ms. Foote got up from the couch, DeWalt did not pursue her.

Immediately following the State's recitation of the above factual basis, the court heard argument on the sentencing from both parties.[1] The class of the burglaries with which DeWalt was charged are within 17–A M.R.S.A. § 401(2)(B), which provides:

2. Burglary is classified as:

.　　.　　.　　.　　.

B. A Class B crime if the defendant intentionally or recklessly inflicted or at-

tempted to inflict bodily injury on anyone during the commission of the burglary, or an attempt to commit such burglary, or in immediate flight after such commission or attempt or if the defendant was armed with a dangerous weapon other than a firearm, or knew that an accomplice was so armed; or if the violation was against a structure which is a dwelling place....

The maximum period of incarceration for a Class B offense is 10 years. 17–A M.R.S.A. § 1252(2)(B) (1983 & Supp.1995). In urging the court to impose maximum, consecutive sentences for the charged offenses, the State pointed out DeWalt's six prior theft and three prior burglary convictions and the fact that both of the present break-ins took place late at night and while the residents were within their respective homes.

Dr. Forrest Sherman, a treating therapist for the Department of Corrections, stated to the court that DeWalt suffers from paranoid schizophrenia and antisocial personality and that, at the time he committed the charged offenses, he was on the wrong dosage of the medication he takes for those illnesses. On that basis, DeWalt urged the court to consider a program of close supervision and counseling by Sherman in lieu of a sentence of incarceration. The court rejected this recommendation and determined that, because the burglaries were committed at night and involved confrontations with the owners, the appropriate basic period of incarceration for the burglaries should be ten years, the maximum period permitted for a Class B offense. The court then addressed DeWalt's alleged mental illness, finding that the paranoid schizophrenia was a minor mitigating factor that "may have played a role in these crimes and indeed in this criminal history." The court arrived at final unsuspended sentences of eight years for the burglaries, each to be concurrent with the other as well as with the sentences imposed for the remaining convictions. We granted DeWalt's application for leave to appeal from his sentences. 15 M.R.S.A. §§ 2151–2157 (Supp.1995); M.R.Crim.P. 40.

---

1. We note that the Court did not require a presentence investigation prior to sentencing DeWalt.

■ DeWalt contends that the trial court erred by setting the basic period of incarceration at the maximum number of years permitted for the class of offense. We disagree. Sentencing is a three-step process whereby the trial court must first determine the basic period of incarceration "solely by ... 'considering the particular nature and seriousness of the offense without regard to the circumstances of the offender.'" *State v. Hewey,* 622 A.2d 1151, 1154 (Me.1993) (quoting *State v. Weir,* 600 A.2d 1105, 1106 (Me.1991)).

As the second step in the sentencing process, the sentencing court determines the maximum period of incarceration. In so doing, the court considers "those factors peculiar to that offender," including the defendant's prospects for rehabilitation and the probability of re-offense. *Hewey,* 622 A.2d at 1154. Finally, as the third step of the sentencing process, in imposing the final sentence the court considers whether some portion of the maximum period of incarceration should be suspended, when, for instance, the public will be better protected by imposing a period of supervised probation. *Id.* at 1155.[2]

■ We review the trial court's determination of the basic period of incarceration for misapplication of principle. *Hewey,* 622 A.2d at 1155; *State v. Hallowell,* 577 A.2d 778, 781 (Me.1990). Because the determinations of the maximum period of incarceration and final sentence require the court to examine the particular characteristics of the offender and the protection of the public, we review those determinations for an abuse of discretion. *Hewey,* 622 A.2d at 1155; *State v. Kehling,* 601 A.2d 620, 625 (Me.1991).

■ Offenses within the same statutory provision "may be committed in a number of different ways and with varying degrees of seriousness." *State v. Michaud,* 590 A.2d 538, 542 (Me.1991) (citing *Hallowell,* 577 A.2d at 781; *State v. St. Pierre,* 584 A.2d 618, 621–

22 (Me.1990)). "Before imposing a maximum sentence ... the trial court must compare the conduct of [DeWalt] on a scale of seriousness against all the possible means of committing [burglary] and conclude that it ranks at or near the top of that scale." *Michaud,* 590 A.2d at 542 (citation omitted). Here, the burglaries were committed against residential dwellings in the nighttime, while women and children were present. Such crimes formerly constituted capital offenses. DeWalt touched one of the victims while she lay on the couch. Although no firearm or other dangerous weapon was used, the presence of either would have raised the classification of the offense to Class A. *See* 17–A M.R.S.A. §§ 401(2)(A), 1252(4); *Hallowell,* 577 A.2d at 781 (citing Wathen, DISPARITY AND THE NEED FOR SENTENCING GUIDELINES IN MAINE: A PROPOSAL FOR ENHANCED APPELLATE REVIEW, 40 Me.L.Rev. 1 (1988)). Accordingly, in the circumstances of this case, the selection of a basic period of incarceration of ten years is not an error in principle justifying vacating the sentences imposed.

■ Moreover, we find no merit in DeWalt's additional contention that, because he suffers from a mental illness, the court erred by failing to reduce to less than eight years the unsuspended portion of his sentence. A defendant's mental illness can serve as an aggravating or a mitigating factor in sentencing. *See Michaud,* 590 A.2d at 544 (aggravating factor that defendant failed to take medication to control illness; fact that defendant suffered from long history of mental illness and emotional problems is mitigating factor). DeWalt does not contend that the court failed to recognize his mental illness as a potential mitigating factor. Rather, he challenges the weight the court allocated to the mental illness as a mitigating factor. Contrary to DeWalt's contentions, the trial court,

---

2. The fact that the final sentence imposed may not include much, or even any, time to be served does not mean that we do not review the basic period of incarceration and the maximum period of incarceration. *See State v. Lilley,* 624 A.2d

935, 936 (Me.1993) (sentence review includes suspended portion of sentence; underlying ten-year sentence vacated even though time to be served in final sentence only nine months and one day).

in determining that two years of the sentence should be suspended, acted well within its discretion when it balanced DeWalt's mental illness against the aggravating factors such as his prior criminal record and probability of re-offending.

The entry is:

Sentences affirmed.

All concurring.