2006 ME 43

**STATE of Maine**

v.

**Walter S. COBB II.**

Supreme Judicial Court of Maine.

Argued: Nov. 14, 2005.
Decided: April 28, 2006.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Attorney, Bangor, for State.

Kirk D. Bloomer, Esq., Bloomer Law Office, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SAUFLEY, C.J.

[¶ 1] We are called upon here to answer this question: In applying 17–A M.R.S.A. § 1252(2)(A) (Supp.2003),[1] must a defendant be afforded the opportunity to have a *jury* determine whether the defendant's "serious criminal history" warrants a sentence in the upper tier if the nature and seriousness of the defendant's crime alone do not warrant a sentence in the upper tier? *See* U.S. CONST. amend. VI; *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[¶ 2] Because we conclude that the court was not required to afford Walter S. Cobb II an opportunity to present his criminal record to a jury and because we find that any other error was harmless, we affirm his sentence. We also affirm Cobb's conviction without discussion because we discern no error related to the issues Cobb raises.

## I. BACKGROUND

[¶ 3] Cobb appeals from the sentence imposed on him by the Superior Court (Penobscot County, *Hjelm, J.*), and also appeals from the court's judgment, entered after a jury trial, which reflected Cobb's conviction of robbery (Class A), 17–A

M.R.S.A. § 651(1)(E) (Supp.2003); burglary (Class A), 17–A M.R.S. § 401(1)(B)(1) (2005); possession of a firearm by a prohibited person (Class C), 15 M.R.S.A. § 393(1)(A–1)(1), (8) (2003); reckless conduct with a dangerous weapon (Class C), 17–A M.R.S. §§ 211, 1252(4) (2005); criminal threatening (Class C),[2] 17–A M.R.S. § 209 (2005); theft by unauthorized taking or transfer (Class D), 17–A M.R.S.A. § 353(1)(B)(5) (Supp.2003); burglary of a motor vehicle (Class C), 17–A M.R.S.A. § 405 (Supp.2003); and theft by unauthorized use of property (Class D), 17–A M.R.S.A. § 360(1)(A), (4) (Supp.2003).[3] Cobb raises discovery and evidentiary issues and argues that the court should have granted his motion for a mistrial.[4]

[¶ 4] The jury could reasonably have found that Cobb instigated and led two other men in planning and conducting an armed robbery. On the morning of March 9, 2003, the victim, the victim's wife, and their two daughters, ages one and four, were in their home asleep. At about 8:45, Cobb entered the home with two other men, stuck a gun in the victim's face, dragged him out of bed naked, asked for money and drugs, took the victim to another room, and sat him in a chair. Cobb twice cocked his gun and aimed at the victim then moved his gun and fired the weapon near the victim. Cobb demanded the keys to the family truck, took a gun

1. This statute, which sets forth two tiers in which a defendant could be sentenced for a Class A crime other than murder, was amended to provide for sentencing to "a definite period not to exceed 30 years." *See* P.L.2003, ch. 657, § 10 (effective July 30, 2004) (codified at 17–A M.R.S. § 1252(2)(A) (2005)).

2. The class of this crime was elevated because it was "committed with the use of a dangerous weapon." 17–A M.R.S.A. § 1252(4) (1983).

3. We provide citations to the statutes in effect at the time Cobb committed the crimes. The

statutes that do not have current citations have been amended since Cobb committed the crimes, but because we are only concerned with sentencing in this case, we do not detail those amendments in this opinion.

4. Specifically, Cobb argues that the court erred in denying his motion to compel discovery of inmate telephone records and exceeded the bounds of its discretion in admitting Cobb's photo driver's license and denying his motion for a mistrial after a witness stated that he was a felon.

and some drugs from the victim's home, and threatened that he would kill the victim and his family if they contacted the police.

[¶ 5] Cobb was indicted on eight counts, including one count for robbery and one for burglary on May 5, 2003. Cobb waived his right to a jury trial on the charge against him for possession of a firearm by a prohibited person, but all other counts were tried to the jury. After trial, the jury or the court found Cobb guilty on each count.

[¶ 6] The Department of Corrections filed a presentence investigation report that included a list of Cobb's prior convictions, a description of his personal history, the Maine State Police incident report for the crimes against the current victims, Cobb's criminal history SBI report, and a 1997 mental health summary and analysis from the Maine Correctional Center.

[¶ 7] The State filed its sentencing memorandum along with the presentence investigation report. The State argued for a basic sentence of twenty-five years based on the heinousness of the crimes. *See State v. Lewis,* 590 A.2d 149, 151 (Me.1991) (requiring a finding that a crime is among "the most heinous and violent crimes committed against a person" to impose a sentence above twenty years). Based on Cobb's prior convictions, a court-ordered psychiatric evaluation from January 2004, and the impact on the victims, the State argued for a maximum sentence of thirty years. The State argued, as well, that if the court set the basic sentence at twenty years or lower, the Court could still set the maximum at thirty years based on "the nature and seriousness of the crime coupled with the serious criminal history of the defendant." 17–A M.R.S.A. § 1252(2)(A).

[¶ 8] Finally, the State argued that Cobb should not be allowed probation because he committed several felonies during his first probationary sentence, had his second probation revoked because of new criminal conduct, and had his most recent probation revoked and was required to serve a three-year sentence. The State argued that, because of Cobb's demonstrated inability to address his dangerous behavior through treatment or probation, the court should require him to serve a full thirty years in prison without probation. The State attached to its memorandum a set of sentencing statistics, a list of Cobb's convictions, and a collection of court documents and police reports from Cobb's prior criminal cases.

[¶ 9] Cobb's sentencing memorandum argued for a basic sentence of ten years, with a maximum of fifteen years. Cobb admitted that he had been convicted of six misdemeanor and six felony convictions in fourteen years, with his longest sentence being set at five years, all but two suspended, with four years of probation for a 1997 Class C assault. He also admitted he has a history of psychiatric hospitalizations and treatments, but argued that the psychiatric report filed with the court provided little insight because the report concluded "that [Cobb] *may* have [a] severe personality disorder together with some underlying disturbance." (Emphasis added.) Cobb argued that "the extent of [his] mental illness ... [had] never been properly diagnosed and treated." Finally, Cobb argued that he should have "an extensive period of supervised community release" with a requirement of mental health treatment.

■ [¶ 10] At the sentencing hearing,[5] the court noted that it had reviewed the

5. Cobb filed a motion in limine to determine the maximum sentence allowable pursuant to 17–A M.R.S.A. § 1252 (Supp.2003). On

March 18, 2004, before the publication of *United States v. Booker,* 543 U.S. 220, 125

sentencing memoranda and attachments, police reports, and the presentence investigation report, in addition to the trial evidence. The court regarded the burglary and robbery charges as driving the sentencing and treated the other six convictions as aggravating factors.

[¶ 11] In sentencing Cobb, the court conducted the three-part process described in *State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993), and thereafter codified by the Legislature at 17–A M.R.S. § 1252–C (2005).[6] Considering the circumstances of the crimes—specifically, that Cobb took the lead in planning and executing the burglary and robbery, that he wielded a gun and fired it near the victim's head, and that he planned the crimes when he knew the occupants of the house would be present—the court concluded that the basic sentence was twenty years. The court stated that, in considering the seriousness

of the crimes as compared to other ways they might be committed, "taking into account the fact that nobody suffered or sustained personal injury, it's difficult to conceive of a way that these crimes could be committed more seriously." The court stated, however, that "[t]he fact that no one was physically injured is the only thing that persuades me that this is not a case, at least at the basic sentence, which is one that transcends ... the 20–year line." [7]

[¶ 12] Finding no mitigating factors and a number of aggravating factors—specifically, Cobb's criminal history, his violent past, and the psychological impact on the victim and his family—the court concluded that an increase above the basic sentence was warranted. In making this determination, the court relied primarily on the trial evidence and Cobb's conviction history, including the SBI report, but also con-

---

S.Ct. 738, 160 L.Ed.2d 621 (2005), or *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the court held a hearing on the motion prior to the sentencing hearing. Without considering the specific sentencing information, the court concluded as a matter of law that it had the authority to sentence Cobb to up to forty years of imprisonment without Cobb receiving the opportunity to have a jury determine the nature and seriousness of the crime. It is now clear that the elevation of a sentence above twenty years requires the court to afford a defendant the opportunity for a jury to make a finding regarding the nature and seriousness of the crime. *See State v. Schofield*, 2005 ME 82, ¶¶ 14, 20–22, 876 A.2d 43, 48, 49–50. Nonetheless, because the court, in reaching its ultimate sentence, did not exceed twenty years based on the nature and seriousness of the crime, any possible claim of error regarding the motion in limine is rendered moot by the court's subsequent actions at the sentencing hearing. *See In re Janna Lynn M.*, 2002 ME 45, ¶ 12, 793 A.2d 506, 509 (prohibiting an appeal from a determination that became moot due to subsequent court action).

6. First, the court must determine a basic period of incarceration based on the nature and seriousness of the criminal conduct alone.

17–A M.R.S. § 1252–C(1) (2005); *State v. Hewey*, 622 A.2d 1151, 1154 (Me.1993). Next, the court must consider the aggravating and mitigating factors peculiar to the offender to determine the maximum period of incarceration. 17–A M.R.S. § 1252–C(2) (2005); *Hewey*, 622 A.2d at 1154–55. Finally, the court may suspend a portion of the maximum period of incarceration and determine an appropriate period of probation. 17–A M.R.S. § 1252–C(3) (2005); *Hewey*, 622 A.2d at 1155.

7. Ideally, the court would have determined whether it would be considering a sentence in the upper tier *before* beginning the three-part *Hewey* analysis. *See State v. Sweet*, 2000 ME 14, ¶ 12, 745 A.2d 368, 372 (stating that the determination whether a crime falls in the upper tier of Class A sentences is a preliminary step that establishes a range up to twenty years or a range up to forty years). The court's blended approach did not result in prejudicial error, however. Some overlap in the analyses was inevitable and the sentencing transcript leaves no doubt that the court would have concluded that a sentence within the upper tier was warranted.

sidered other violent behavior and the 2004 psychiatric evaluation. In taking the psychiatric report into account, however, the court stated that it was not relying heavily upon the report's conclusions because Cobb presented a completely different family history to the probation officer who conducted the presentence investigation and the court could not trust the psychiatrist's report as a result. The court relied in part on the report, however, to highlight "a pattern of conduct where [Cobb] regards the rights and interests of other people for his own purposes."

[¶ 13] The court described Cobb's history of convictions, but also stated that Cobb "has engaged in other acts of violence, which have not apparently resulted in criminal prosecution, as [the State] has indicated." In addition, the court relied on Cobb's admissions to the psychiatrist in 2004 that "he killed another inmate during a riot in prison because, in Mr. Cobb's view, he had to do that to protect himself. He said that during another incident in a prison riot, he stabbed five people." The Court also stated that Cobb "has inflicted violence on a guard in a correctional facility."

[¶ 14] The court then fixed a maximum period of incarceration of twenty-five years, determining that the manner in which Cobb committed the crimes would not alone "justify a sentence in excess of 20 years, but . . . this case is right on the threshold of that 20–year demarcation and . . . when Mr. Cobb's background, including his serious criminal history, is added as an ingredient to the recipe, then as a result we are in that upper tier." Finally, the court concluded that because of the aggravating factors and Cobb's poor prospects for rehabilitation, a twenty-five-year unsuspended sentence without probation was appropriate.

[¶ 15] The court imposed a five-year sentence for possession of a firearm by a prohibited person, a five-year sentence for reckless conduct, a five-year sentence for criminal threatening, a 364–day sentence for theft by unauthorized taking, a one-year sentence for burglary of a motor vehicle, and a 364–day sentence for unauthorized use of property, all sentences to be served concurrently.

[¶ 16] Cobb timely requested and obtained leave to appeal from his sentence and filed his notice of appeal.

## II. DISCUSSION

[¶ 17] Cobb contends that the court's imposition of a twenty-five-year sentence of imprisonment violated his right to due process and his Sixth Amendment right to trial by jury. He argues that the court failed to give him the opportunity to have the jury conduct the fact-finding required by *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to determine whether the "nature and seriousness of the crime *coupled with the serious criminal history of the defendant,*" 17–A M.R.S.A. § 1252(2)(A) (emphasis added), justified an elevation of the sentence above twenty years. In addition, Cobb argues that the United States Supreme Court decision in *Blakely,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, requires that the defendant have the opportunity to have a jury make the factual finding as to whether the crime was among the most heinous and violent crimes committed against a person, *see State v. Carr,* 1998 ME 237, ¶ 5, 719 A.2d 531, 533.

[¶ 18] At the time Cobb was convicted, the applicable sentencing statute provided for a maximum sentence of forty years, but permitted a sentence above twenty years only in certain circumstances:

> In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. The court may consider a

serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant[.]

17–A M.R.S.A. § 1252(2)(A). The statute has since been amended to eliminate the two-tier system and establish a thirty-year sentencing range for Class A crimes generally. P.L.2003, ch. 657, § 10 (effective July 30, 2004) (codified at 17–A M.R.S. § 1252(2)(A) (2005)). The present case preceded the amendment of section 1252(2)(A), however, and we consider Cobb's sentence in light of the recent United States Supreme Court jurisprudence holding that an elevation in sentencing beyond the statutory maximum based on facts not found beyond a reasonable doubt by the defendant's choice of fact-finder violates the Sixth Amendment unless the defendant has the opportunity to submit factual questions to a jury. *Booker*, 543 U.S. at 244, 125 S.Ct. 738; *Blakely*, 542 U.S. at 303–05, 124 S.Ct. 2531.

[¶ 19] We considered this United States Supreme Court jurisprudence recently and concluded that the former section 1252(2)(A) required that the defendant be provided with the opportunity to have a *jury* determine whether an elevation into the second tier was warranted because the crime was, beyond a reasonable doubt, among " 'the most heinous and violent crimes committed against a person.' " *State v. Schofield*, 2005 ME 82, ¶¶ 14, 20–22, 876 A.2d 43, 48, 49–50 (quoting *Lewis*, 590 A.2d at 151). In that case, in determining the sentence before the announcement of *Booker* and *Blakely*, the sentencing court elevated the basic sentence above twenty years because of the heinousness of the crime alone; the defendant had no criminal history. *Id.* ¶¶ 7, 16, 876 A.2d at 46–47, 48.

[¶ 20] We also vacated a sentence imposed pursuant to section 1252(2)(A) based on our decision in *Schofield*, 2005 ME 82, 876 A.2d 43, in a case where the defendant had a criminal history. *State v. Averill*, 2005 ME 83, ¶¶ 4, 9, 887 A.2d 519, 521–22. As it existed at the time of the sentencing, section 1252(2)(A) permitted a sentence in the upper tier "based on … the nature and seriousness of the crime coupled with the serious criminal history of the defendant." 17–A M.R.S.A. § 1252(2)(A). In *Averill*, although the defendant did have a criminal history, the sentencing court first set a basic sentence above twenty years based on a determination of heinousness alone, without consideration of that criminal history. *Averill*, 2005 ME 83, ¶ 9, 887 A.2d at 521–22.

[¶ 21] This case poses the next question: Pursuant to section 1252(2)(A), if the nature and seriousness of the crime alone do not warrant a sentence in the upper tier, must a defendant be afforded the opportunity to have a jury make the determination that the defendant's "serious criminal history" warrants a sentence in the upper tier?

[¶ 22] We agree with the jurisdictions that have answered this question in the negative; the elevation into the upper tier does not require submission to a jury if it is based solely on prior convictions. The United States Supreme Court has repeatedly held that a court does not violate the Sixth Amendment when it elevates a sentence based on the fact of prior convictions. *See, e.g., Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; *Booker*, 543 U.S. at 244, 125 S.Ct. 738. This rule has been applied with equal force in the federal courts since the *Booker* decision. *See, e.g., United States v. Work*, 409 F.3d 484, 491 n. 1 (1st Cir.2005) (stating that the rationale of *Apprendi* and *Blakely* "simply does not affect sentence-enhancement provisions premised upon a defendant's prior criminal convic-

tions"); *United States v. Barrero*, 425 F.3d 154, 157 (2d Cir.2005) (stating that a court does not violate the Sixth Amendment by basing a sentence on its finding of a prior conviction by a preponderance of the evidence).

[¶ 23] Thus, if the court here had relied only on criminal conviction data in determining that a sentence in the upper tier was warranted, our analysis would end at this point. However, some of the information that the court relied on in setting the maximum sentence above twenty years went beyond the fact of a prior conviction. Following the United States Supreme Court's decisions in *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and *Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, other courts have begun to consider whether a court violates the Sixth Amendment by relying on such additional nonconviction information to elevate a sentence into a higher tier. *See, e.g., State v. Burdick*, 209 Ariz. 452, 104 P.3d 183, 187 (Ct.App.2005) (holding that the sentencing court violated the Sixth Amendment when it elevated a sentence based on evidence of failed attempts to rehabilitate and a history of alcohol and drug abuse); *United States v. Barnett*, 398 F.3d 516, 524–25 (6th Cir.2005) (holding that a sentencing court may determine the *nature* of a prior conviction without violating the Sixth Amendment).

[¶ 24] Given the court's articulation of its sentencing analysis, however, we need not address whether the court erred in relying on information other than the fact of prior convictions because we conclude, based on the court's reasoning in the record, that it would have elevated the sentence into the next tier based on Cobb's extensive prior convictions alone. *See Booker*, 543 U.S. at 244, 125 S.Ct. 738; 17–A M.R.S.A. § 1252(2)(A); M.R.Crim. P. 52(a) (requiring us to disregard any error that "does not affect substantial rights"). Because the basic sentence was set by the court at the highest point within the lower tier, and because Cobb has a substantial record of prior convictions, it is clear that the court would have concluded that Cobb's criminal history, combined with the nature and seriousness of the crime, warranted setting the maximum sentence in the upper tier, even without the additional evidence indicating a history of violence or the psychiatric report.[8]

[¶ 25] Once the sentencing range is legitimately within the upper tier, the court acts within its discretion in considering other aspects of the defendant's history. On this record, we discern no abuse of discretion in setting the maximum sentence at twenty-five years.

[¶ 26] In sum, taking into account the court's justifiable decision to set a basic sentence of twenty years based on the nature and seriousness of the crime, Cobb's prior convictions are sufficient to justify an elevation into the second tier. It is clear from the record that, even if the court may have erroneously considered evidence other than the fact of prior convictions, the court would have elevated the sentence into the second tier without considering such nonconviction information. Any possible error was, therefore, harmless.

The entry is:

Judgment and sentence affirmed.

---

8. The court discounted the weight of the psychiatric report, concluding only that Cobb "has engaged in a pattern of conduct where he regards the rights and interests of other people for his own purposes." This conclusion flows equally from Cobb's extensive prior convictions.