1998 ME 111

**STATE of Maine**

v.

**Nikolay SHULIKOV.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1997.

Decided May 14, 1998.

Michael P. Cantara, District Attorney, David D. Gregory, of counsel (orally), Anne Marie Letourmeau–Pazar, Asst. Dist. Atty., Alfred, for the State.

Thomas J. Connolly (orally), Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] Nikolay Shulikov appeals from the judgments of conviction entered in the Superior Court (York County, *Bradford, J.*) after a jury verdict finding him guilty of ten counts of Class A gross sexual assault, one count of Class B gross sexual assault, two counts of terrorizing, and one count of sexual abuse of a minor, contending: the court's failure to instruct the jury on the presumption of innocence and burden of proof at the start of the trial was obvious error; the evidence was insufficient as a matter of law; and the prosecutor's use of improper impeachment methods resulted in obvious error. Shulikov also appeals from the sentences imposed on him, claiming that the court: abused its discretion in sentencing Shulikov to a twenty year unsuspended sentence on the ten counts of Class A gross sexual assault; improperly took the relationship between Shulikov and the victim into account at both the first and second steps of the sentencing process; improperly used the family's support of Shulikov as an aggravating factor; abused its discretion by not taking Shulikov's health into account in sentencing; and unlawfully imposed consecutive sentences on Counts 13 and 14. We affirm the judgments of conviction and affirm in part and vacate in part the sentences.

## I. THE FACTS

[¶ 2] In October 1995, Shulikov's daughter, then fourteen years old, told her friend that she had been raped by her father. She subsequently reported a two-year history of sexual abuse by her father to her mother, her friend's mother, a crisis worker from Sweetser Children's Services, and investigators with the Saco Police Department. As a result of his daughter's allegations, Shulikov was charged in a fourteen count indictment with ten counts of gross sexual assault (Class A) in violation of 17–A M.R.S.A. § 253(1)(B) (Supp.1997); two counts of terrorizing (Class D) in violation of 17–A M.R.S.A. § 210(1)(A) (1983); one count of gross sexual assault (Class B) in violation of 17–A M.R.S.A. § 253(2)(H) (Supp.1997); and one count of sexual abuse of a minor (Class C) in violation of 17–A M.R.S.A. § 254(1)(A), (3)(A), and

(3)(B) (Supp.1997). Shulikov pleaded not guilty to all charges.

[¶ 3] During the course of a three-day trial, the State called six witnesses, including the victim and the victim's mother and brother. The victim testified that her father first had sexual intercourse with her sometime between December 1992 and June 1993. She reported that the second incident took place "a couple of days" after she returned from a trip to her godmother's house that she took shortly after the first incident. She related that her father had sexual intercourse with her approximately three times a week for about a year and then with decreasing frequency for another year, and that the last time she remembered her father having intercourse with her was in October 1995. Although she did not describe any other specific incidents of sexual intercourse with her father, she testified that she did not remember ever going longer than a week between January 1993 and December 31, 1994, without her father having sexual intercourse with her.

[¶ 4] Shulikov called three character witnesses in his defense: his wife's sister, brother, and father. Shulikov's sister-in-law and brother-in-law each testified that Nikolay had a reputation in his community as a truthful man and a good father. On cross-examination, the prosecutor, without objection, asked them whether their opinion of Shulikov as a good father would change if they heard from a truthful person that Shulikov had provided alcohol to people under the age of twenty-one. The witnesses stated that this information would change their opinion. Shulikov also testified in his own defense and denied that he had sexually assaulted or threatened his daughter.[1] The jury found Shulikov guilty on all fourteen counts.

[¶ 5] Before sentencing Shulikov, the court reviewed a presentence investigation report and written submissions from members of the family of the victim's mother. At the sentencing hearing, the court heard arguments from the prosecutor and the defense counsel, as well as statements from the victim's mother and brother, and, in support of Shulikov, statements from the pastor of Shulikov's church, several of the victim's mother's siblings, and Shulikov himself. The court performed the sentencing analysis required pursuant to *State v. Hewey,* 622 A.2d 1151 (Me.1993) and as codified at 17–A M.R.S.A. § 1252–C (Supp.1997).[2] The court sentenced Shulikov as follows:

- Counts 1 to 10—Gross Sexual Assault (Class A): 20 years of imprisonment to be served concurrently.

---

1. Shulikov and several other witnesses in this case spoke Russian and required the services of an interpreter. M.R.Crim.P. 28 provides that "[t]he court may appoint a disinterested interpreter of its own selection and may determine the reasonable compensation of such interpreter. Interpreters shall be appropriately sworn." An interpreter is defined as "[o]ne who translates orally from one language into another." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 638 (1988). Translate, in turn, means "[t]o express in another language, *while systematically retaining the original sense.*" *Id.* at 1227 (emphasis added). An examination of the record reflects that the individual appointed as the interpreter in this case provided what properly can be characterized as "paraphrasing" of the testimony rather than translation in the strict sense of the word. Because the need for strict translation of testimony goes directly to the heart of the jury's critical task of evaluating the credibility of witnesses, we strongly encourage the trial courts to be vigilant in ensuring that interpreters perform their appropriate role in a judicial proceeding, namely providing a precise and accurate translation of the exact testimony of a witness.

2. 17–A M.R.S.A. § 1252–C (Supp.1997) is a codification of the sentencing process we enunciated in *State v. Hewey:*

   **1.** The court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender.

   **2.** The court shall next determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest.

   **3.** The court shall finally determine what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension.

- Counts 11 and 12—Terrorizing (Class D): 364 days of confinement on each of the two counts to be served consecutively to Counts 1 to 10 and consecutively to each other.

- Count 14—Gross Sexual Assault (Class B): six years with all but four years suspended to be served consecutively to Count 12 and to be followed by four years of probation.

- Count 13—Sexual Abuse of a Minor (Class C): three years all suspended followed by four years of probation to be served consecutively to the previous term of probation.

The sentence as a whole resulted in 26 years of imprisonment followed by eight years of probation with five years of imprisonment suspended. The Sentence Review Panel granted Shulikov's application for leave to appeal his sentence pursuant to M.R.Crim.P. 40 on September 19, 1997.

## II. THE DIRECT APPEAL

### A. JURY INSTRUCTIONS

[¶ 6] In challenging his convictions, Shulikov first argues that the trial court committed obvious error because it failed to instruct the jury at the start of the trial regarding the presumption of a defendant's innocence, the burden of proof in a criminal prosecution, and the fact that the indictment should not be given any evidentiary weight. He contends that such instructions at the beginning of a case are necessary to guarantee a fair trial, and that the court's failure to provide the instructions immediately after the reading of a long and prejudicial indictment constitutes obvious error.

[¶ 7] Shulikov made no request for the instructions at the beginning of the trial and did not bring the failure to provide such instructions to the court's attention. The failure to give the instructions is therefore reviewed for obvious error. *State v. Dow*, 616 A.2d 864, 865 (Me.1992). Obvious error review seeks to "maintain the basic integrity of judicial proceedings ... in order to avoid depriving the defendant of his constitutional right to a fundamentally fair trial and thus prevent a miscarriage of justice." *State v. Bahre*, 456 A.2d 860, 864 (Me.1983).

[¶ 8] The trial court addressed the jury prior to the reading of the indictment as follows:

Again keep in mind that this is only a written accusation and this will be followed by the opening statements of the attorneys. The statements of the attorneys are not evidence. The purpose of an opening statement is for the attorneys to tell you what they believe the testimony and the evidence is going to show, but the evidence that you will be considering in this case will be the sworn testimony of the witnesses who testify and such exhibits as may be admitted into evidence.

The court gave the following instruction before the jury began its deliberations:

I have mentioned this to you at the outset of this trial and I mentioned [sic] it to you again as part of my final instructions, but the law presumes Mr. Shulikov to be innocent and every defendant, although accused, begins a trial with a clean slate, with no evidence whatsoever against him and this presumption of innocence alone is sufficient to acquit the defendant unless you are satisfied beyond a reasonable doubt of the defendant's guilt after a careful consideration of all of the evidence in the case.

There is no record, however, of the court actually instructing the jury on the presumption of innocence or burden of proof at the start of the trial.

[¶ 9] M.R.Crim.P. 30(b) allows a court flexibility in deciding the timing of instructing the jury: "The court, at its election, may instruct the jury before or after argument, or both." Although the *Maine Jury Instruction Manual* provides an example of an instruction that includes the law governing the presumption of innocence and the burden of proof which may be made immediately after the clerk finishes reading the charging document, *see* Alexander, *Maine Jury Instruction Manual* §§ 4–1, 4–2 (3d ed. 1996), such an instruction at that juncture has never been held to be constitutionally required for a fair trial. *See, e.g., United States v. Payne*, 944 F.2d 1458, 1464

(9th Cir.1991) (analysis of whether ill-timing or omission of a presumption of innocence instruction constitutes reversible error is based on individual circumstances of particular case).

[¶ 10]   On appeal we review Jury instructions in their entirety to ensure they are adequate. *State v. Cloutier,* 1997 ME 96, ¶ 14, 695 A.2d 550, 554.   This method of review comports with the United States Supreme Court's standard of ensuring a defendant's right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment. *See Kentucky v. Whorton,* 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979) (per curiam) (failure to give a requested instruction on the presumption of innocence must be evaluated in light of the totality of the circumstances, including all the instructions to the jury, to determine whether defendant received a fair trial).   In *State v. Liberty,* 478 A.2d 1112 (Me.1984), we held that a defendant suffered no prejudice by an erroneous jury instruction where the court corrected its mistake prior to jury deliberation.   "A presiding justice has a right to correct an instruction to the jury before it retires, and jurors are duty-bound to ignore any part of the charge withdrawn." *Id.* at 1117.   In the present case, the jury was fully and properly instructed on the burden of proof and the presumption of innocence prior to retiring, and the court's failure to so instruct at the beginning of the trial, if error at all, did not "constitute[ ] highly prejudicial error tending to produce manifest injustice." *Dow,* 616 A.2d at 865 (quotations omitted).

## B.  SUFFICIENCY OF THE EVIDENCE

[¶ 11]   Shulikov next argues that the evidence presented at trial was insufficient to convict him on eight counts of the fourteen count indictment.   The indictment charged Shulikov with ten counts of gross sexual assault covering the time period between January 1, 1993, and December 31, 1994 (counts 1 to 10), as well as sexual abuse of a minor and gross sexual assault occurring between October 1 and October 31, 1995 (counts 13 and 14).   The victim testified in detail about the first two instances of sexual assault by her father, which occurred in early 1993, and about the last assault, which occurred in October 1995.   Shulikov concedes that the evidence is sufficient to sustain convictions on counts 13 and 14, but argues that the evidence supports only two convictions from the first ten counts.

[¶ 12]   Regarding the overall pattern of sexual abuse by her father, the victim testified that he engaged in sexual intercourse with her over a two year period about three times a week for the first year and less frequently the next year.   She also could not remember ever going longer than a week without her father having sexual intercourse with her during the period from January 1993 to December 1994.

[¶ 13]   When examining the sufficiency of the evidence, we review the evidence in the light most favorable to the State to determine whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged. *State v. Beaudet,* 1997 ME 133, ¶ 4, 696 A.2d 436, 438. Viewing the evidence in this light, the jury reasonably could have believed the victim's testimony that Shulikov engaged in sexual intercourse with her at least once a week during the time periods charged in the indictment.   This testimony is sufficient for the jury to find every element of gross sexual assault beyond a reasonable doubt.   There is no requirement that each count must be substantiated by details as to time, place, and location, *see Cloutier,* 1997 ME 96, ¶ 10, 695 A.2d at 554 (testimony of multiple acts of sexual abuse occurring over three years sufficient to support convictions on multiple counts of gross sexual assault), and Shulikov's argument that we should vacate the convictions in the face of such "weak evidence" is without merit.

## C.  CROSS–EXAMINATION

[¶ 14]   Shulikov next argues that the prosecutor's cross-examination of two of the defense character witnesses was so highly prejudicial as to affect his substantial rights. After two of Shulikov's character witnesses testified to his reputation as a truthful man and a good father, the prosecutor asked each, without objection, whether their opinion of Shulikov's reputation as a good father would

change if they heard from a truthful person that he had provided alcohol to persons under the age of twenty-one. No factual basis for the prosecutor's question was given or asked for at trial. Shulikov contends that the questions amount to impermissible testimony by the prosecutor as to a matter outside the record. At the time it filed its brief in this case, the State also filed an unopposed motion to supplement the record with a police report that contained an allegation by Shulikov's son that Shulikov provided alcohol to minors at a birthday party held for the victim. The State argues that this police report provided the prosecutor with a good faith basis for asking the impeaching question.[3]

■ [¶ 15] When questions during cross-examination are not objected to, they are reviewed for obvious error. M.R.Crim.P. 52(b); *State v. Roberts,* 641 A.2d 177, 178 (Me.1994). "[T]he State's questions ... would constitute obvious error only if, in [their] probable effect on the jury, [they] tend to produce manifest injustice." *Id.* at 178 (quotations omitted).

■ [¶ 16] M.R.Evid. 405(a) provides that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination, inquiry is allowable into relevant specific in-stances of conduct." The leading case regarding this procedure advises that to guard against misuse of inquiry into specific instances of conduct on cross-examination, the trial court should ascertain out of the jury's hearing that the question is related to an actual event. *Michelson v. United States,* 335 U.S. 469, 481, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948). *See also* Field & Murray, *Maine Evidence* § 405.2 (4th ed. 1997) (warning of the likelihood of unfair prejudice to a defendant because asking whether the witness has heard of a given misdeed carries the implication that the accused actually committed it). The State did not request such a procedure in this case. The State, however, has provided its factual basis for the questions by supplementing the record. Shulikov responds by contending that the report made to the police that he provided alcohol to minors is untrustworthy, and that he was deprived of the right to challenge such evidence because the prosecutor did not reveal the basis for the allegation at trial.[4]

■ [¶ 17] In these circumstances, where the State has demonstrated that it had a factual basis for the questions asked, where Shulikov acquiesced in the questioning and did not ask the State to demonstrate its foundation for the questions, and where no further reference to the allegation of provid-

---

3. The parties represented to us at oral argument that there were a number of unrecorded chambers conferences regarding evidentiary and other issues in this case. For example, the State maintained at oral argument that the defendant possessed a copy of the police report upon which it based its cross-examination questions, and that the proposed questions were likely discussed off the record. The State speculated that the defense counsel's knowledge of the police report was the probable reason no objection was raised to the questions at trial. Likewise, the parties agree that the admissibility of a videotape, *see infra* note 4, was presumably discussed during an unrecorded conference.

We cannot review matters that are not properly a part of the record on appeal. We encourage parties to ensure that all material chambers conferences are appropriately memorialized to allow for full and adequate appellate review.

4. In his reply brief and at oral argument, Shulikov strongly urged us to consider the content of a videotape when deciding whether the prosecu-tor's allegedly improper cross-examination resulted in a fundamentally unfair trial. According to Shulikov, the videotape, which depicts the events of the victim's birthday party, conclusively proves that the allegations against him regarding serving alcohol to minors were false. He argues that if the basis for the prosecutor's question had been disclosed at trial, he could then have introduced the videotape in evidence to rebut the charge. Shulikov concedes that the tape was in the possession of his defense counsel at the time of the trial, yet the record is devoid of any reference to the tape. Shulikov did not offer the tape in evidence, made no offer of proof regarding the content of the tape, and failed to challenge the basis for the prosecutor's question, which, according to his evidentiary theory, would have led to the admissibility of the tape. On direct appeal we will not engage in factfinding nor will we speculate as to the reasoning behind the trial counsel's decision to not offer the videotape at the appropriate time. We therefore decline Shulikov's invitation for us to consider the content of the videotape at this late stage of the proceedings.

**510**

ing alcohol to minors was made during the trial, we conclude that it is not probable that the effect of the questions on the jury produced manifest injustice.[5]

## III. THE SENTENCE APPEAL

### A. BASIC TERM OF IMPRISONMENT

[¶ 18] In challenging the sentence imposed upon him, Shulikov argues that the court misapplied the principles of sentencing when it determined that a basic term of imprisonment on each Class A crime of 20 years was appropriate. He maintains that the court's reference during the sentencing hearing to the maximum term of imprisonment of 40 years demonstrates that the court did not properly apply the two-tier sentencing structure of 17–A M.R.S.A. § 1252(2)(A) (Supp.1997) as interpreted by this Court in *State v. Clark*, 591 A.2d 462, 464 (Me.1991).

[¶ 19] We review the basic term of imprisonment imposed by the trial court for misapplication of principle. *State v. Prewara*, 687 A.2d 951, 953 (Me.1996). Pursuant to 17–A M.R.S.A. § 1252(2)(A),[6] the term of imprisonment for a Class A crime may not exceed 40 years. There are, however, in effect, two discrete ranges of sentences for Class A crimes: the higher range of 20 to 40 years for "the most heinous and violent crimes committed against a person," *Clark*, 591 A.2d at 464 (quoting *State v. Lewis*, 590 A.2d 149, 151 (Me.1991)), and the lower range of up to 20 years for all other commissions of a Class A crime. We have held that "[c]lose-to maximum sentences for sexual assaults are inappropriate in cases that involve neither a weapon, nor a heightened degree of violence, injury, torture, or depravity." *Id.*

[¶ 20] The record reveals that the parties and the court were in agreement that Shulikov's crimes, when compared against all the possible means of committing gross sexual assault, did not warrant a sentence in the expanded sentencing range. At the sentencing hearing the prosecutor stated: "We recommend on counts one through ten, the Class A offenses of gross sexual assault, twenty years to the Department of Corrections." Likewise, Shulikov's counsel conceded "that the original twenty year limit as a maximum period is applicable to Mr. Shulikov." The court concluded that "[t]he ten convictions of gross sexual assault on the defendant's daughter ... did not involve the heightened degree of heinousness which would warrant the imposition of a sentence exceeding twenty years.... The crimes committed, however, are among the most serious and for that reason, the Court determines that a basic term of imprisonment on each Class A crime of twenty years is appropriate."

[¶ 21] The record, as detailed above, does not support Shulikov's contention that the court erroneously believed it was sentencing Shulikov in the mid-range of the available sentence. The court was justified in determining a basic term of imprisonment for the ten counts of gross sexual assault at the top of the permissible range.

### B. AGGRAVATING AND MITIGATING FACTORS

[¶ 22] Shulikov next contends that the court improperly took his relationship with the victim into account at both the first and second steps of the sentencing process. The

---

**5.** The State conceded at oral argument that the prosecutor's phrasing of the questions were improper based on our analysis in *State v. Terrio*, 442 A.2d 537 (Me.1982). "The proper method of cross-examining the [character] witness is to inquire whether he has heard of the conviction in order to question whether there is an adequate basis for the *community's* opinion. The Maine rule does not permit proof of character by the opinion of the witness." *Id.* at 542–43 (citations and footnote omitted) (emphasis added). The prosecutor here asked the witnesses "would *your* opinion of his reputation as a good father change," and "would *your* opinion of him as a good father change." The improper questions,

asked without objection, do not rise to the level of obvious error, however, and in any event are not challenged on this basis on appeal.

**6.** "In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant." 17–A M.R.S.A. § 1252(2)(A) (Supp.1997).

court, in determining the basic term of imprisonment, stated "not only did the conduct of Mr. Shulikov in committing the Class A crimes involve the sexual abuse and emotional scar[r]ing of an innocent child, it involved his own daughter." During the second step of the *Hewey* analysis, the consideration of mitigating and aggravating factors to set the maximum period of imprisonment, the court noted as an aggravating factor that "the crimes committed by Mr. Shulikov were against not only a child, but against his own daughter." The court went on to describe the effect of the crimes on the victim, including the destruction of her innocence, emotional scarring, the likelihood of future difficulties in having normal relationships, and the rejection of her by some family members.

[¶ 23] Although the court referred to Shulikov's relationship to the victim at both the first and second steps of the sentencing process, the court was in fact weighing different considerations at each step. At the first step, the court is required to consider the particular nature and seriousness of the offense. *See* 17-A M.R.S.A. § 1252-C(1). This consideration focuses on the *objective* nature of the offender's conduct. The objective fact that these crimes were committed against a family member is an appropriate aspect of this initial consideration. The effect of the offense on the victim, which the sentencing court is statutorily instructed to consider during the second step of the sentencing process, focuses on the *subjective* effect of the crime on the victim. *See id.* § 1252-C(2). The effect of the crime on the victim in this case was undoubtedly influenced by the fact that the victim was the defendant's own daughter.

[¶ 24] Shulikov also argues that the court improperly considered the rejection of the victim by some members of her family as an aggravating factor during the second step of the sentencing process. He contends that it is improper to punish him based on factors over which he has no control, namely, the family members' exercise of their constitutional right to express their support for him and their rejection of the victim. We disagree.

[¶ 25] As a result of Shulikov's crimes, the victim's family was splintered and the victim was isolated from many of her own family members. The fact that this rejection was evidenced by the family members expressing support for Shulikov does not infringe on their right to free speech, nor does it punish Shulikov for their exercise of that right. If this aggravating factor had led to an increase in Shulikov's sentence, it would have been because of his role in isolating the victim, which is appropriately considered by the court during sentencing. *Id.*

[¶ 27] "A sentencing court has wide discretion in selecting sources of mitigating factors and aggravating factors, provided they are factually reliable." *State v. Weir,* 600 A.2d 1105, 1106 (Me.1991). "[W]e accord the sentencing court great deference in weighing these factors in order that it may appropriately individualize each sentence." *Id.* The sentencing court was made aware of Shulikov's health problems through the presentence investigation report and through statements made at the sentencing hearing. The court did not address the state of Shulikov's health in its sentencing order, however. While the court had the authority to take Shulikov's health into account, *see Weir,* 600 A.2d at 1106, it was not required to do so, and its implicit rejection of Shulikov's bad health as a mitigating factor was within its discretion.

## C. CONSECUTIVE SENTENCES

[¶ 28] Shulikov finally argues that the court violated the law governing consecutive sentences by imposing consecutive sentences on the crimes that occurred after the victim reached age fourteen. *See* 17-A M.R.S.A. § 1256 (1983 & Supp.1997).[7] We

7. 17-A M.R.S.A. § 1256 provides in pertinent part:

  § 1256. **Multiple sentences of imprisonment**

  . . . .

  2. In all other cases, the court shall state in the sentence of imprisonment whether a sentence shall be served concurrently with or consecutively to any other sentence previously imposed or to another sentence imposed on the same date. The sentences shall be concurrent unless, in considering the following factors, the

review a decision to impose consecutive sentences for an abuse of discretion. *State v. Prewara*, 687 A.2d 951, 954 (Me.1996). "When a defendant is subject to multiple sentences of imprisonment, there is a statutory presumption that a sentencing court shall impose the sentences concurrently." *State v. Michaud*, 590 A.2d 538, 543 (Me. 1991) (citing 17–A M.R.S.A. § 1256(2)).

[¶ 29] As a result of a single act of sexual misconduct,[8] the court imposed two sentences on counts 13 and 14: (1) six years of imprisonment with all but four years suspended followed by four years of probation (count 14), and (2) three years of imprisonment all suspended with four years of probation to be served consecutively to the previous four year term of probation (count 13).

[¶ 30] 17–A M.R.S.A. § 1256(3) (1983) provides:

A defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when:

A. One crime is an included crime of the other;

B. One crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other;

C. The crimes differ only in that one is defined to prohibit a designated kind of conduct generally, and the other to prohibit a specific instance of that conduct; or

D. Inconsistent findings of fact are required to establish the commission of the crimes.

[¶ 31] The crime of sexual abuse of a minor generally prohibits sexual acts between adults and children between the ages of fourteen and sixteen, while the crime of gross sexual assault prohibits the more specific instance of such conduct when the actor is a parent of the other person. Because Shulikov's convictions on these two counts arose out of the same criminal episode, we conclude that the imposition of consecutive terms of imprisonment on counts 13 and 14 is a violation of section 1256(3)(C).

[¶ 32] We have no quarrel with the court's determination that consecutive sentences are appropriate based on the different criminal offenses of Class A gross sexual assault (counts 1 through 10) and terrorizing (counts 11 and 12). *See* 17–A M.R.S.A. § 1256(2)(A) (consecutive sentences may be imposed for offenses based on different conduct or arising from different criminal episodes). Nor do we question the court's decision to make the sentence on Shulikov's convictions of sexual misconduct after his daughter's fourteenth birthday consecutive to the previously imposed sentences. The longstanding nature of the sexual assaults perpetrated by Shulikov clearly rises to the level of seriousness that warrants the imposition of consecutive sentences pursuant to section 1256(2)(D). We hold only that the court's imposition of consecutive sentences

court decides to impose sentences consecutively:

A. That the convictions are for offenses based on different conduct or arising from different criminal episodes; ... or

D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

8. Counts 13 and 14 were based on the victim's testimony that her father forced her to engage in sexual intercourse in October 1995 after she had turned 14 years old. In count 13 Shulikov was charged with and convicted of sexual abuse of a minor. "A person is guilty of sexual abuse of a minor if ... [h]aving attained the age of 19 years, the person engages in a sexual act with another

person, not the actor's spouse, who has attained the age of 14 years but has not attained the age of 16 years, provided that the actor is at least 5 years older than the other person." 17–A M.R.S.A. § 254(1)(A) (Supp.1997). Violation of this section is a Class D crime, except that the violation is a Class C crime if the State pleads and proves that the actor "was more than 10 years older that the other person ... [or t]he actor knew the other person was related to the actor within the 2nd degree of consanguinity." *Id.* § 254(3)(A) and (3)(B). Count 14 charged Shulikov with Class B gross sexual assault. "A person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person has not in fact attained the age of 18 years and the actor is a parent ... of that other person." 17–A M.R.S.A. § 253(H) (Supp.1997). Both counts were based on the same episode of sexual misconduct.

on counts 13 and 14 was unlawful, and we therefore vacate only that portion of the sentence imposed on those two counts.

The entry is:

Judgments affirmed. Sentences on counts 1 through 12 affirmed; sentences on counts 13 and 14 vacated and remanded for resentencing in accordance with this opinion.