2006 ME 101

**STATE of Maine**

v.

**Sally A. SCHOFIELD.**

Supreme Judicial Court of Maine.

Argued: June 14, 2006.
Decided: Aug. 17, 2006.

G. Steven Rowe, Atty. Gen., William R. Stokes, Asst. Atty. Gen. (orally), Augusta, for State.

Jed Davis (orally), Jim Mitchell and Jed Davis, P.A., Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] Sally A. Schofield appeals from a judgment entered in the Superior Court

(Kennebec County, *Delahanty, J.*) sentencing her to seventeen years imprisonment following her conviction for manslaughter (Class A), 17–A M.R.S.A. § 203(1)(A) (1983 & Supp.2000).[1] Schofield argues that the court misapplied sentencing principles when it set her basic period of incarceration at twenty years because her crime did not represent one of the worst possible ways of committing manslaughter. She also contends that the court abused its discretion because it ignored or improperly weighed mitigating factors. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] The facts of Schofield's crime and conviction are laid out in detail in *State v. Schofield (Schofield I)*, 2005 ME 82, ¶¶ 3–5, 895 A.2d 927, 929. In *Schofield I*, we concluded that the imposition of a sentence in excess of twenty years that was based solely on the court's determination of the heinousness of Schofield's conduct, when she did not waive her right to a jury trial on that issue, was error and we thus remanded to the Superior Court for resentencing. *Schofield I*, 2005 ME 82, ¶¶ 35–37, 895 A.2d at 937. On remand, the State, pursuant to our decision in *Schofield I* and 17–A M.R.S.A. § 1252(2)(A) (Supp. 2001),[2] sought a twenty-year sentence with no portion suspended. In light of that recommendation, the court decided that a

---

1. The manslaughter statute has been amended since the commission of this crime. *See* P.L. 2001, ch. 383, § 9 (effective January 31, 2003) (codified at 17–A M.R.S. § 203(1)(A) (2005)).

2. At the time of Schofield's crime, the sentencing statute in effect was 17–A M.R.S.A. § 1252(2)(A) (Supp.2001), which provided:

   In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. The court may consider a serious criminal history of the defendant and im-

pose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant[.]

   Section 1252(2)(A) was subsequently amended by P.L. 2003, ch. 657, § 10 (effective July 30, 2004) (codified at 17–A M.R.S. § 1252(2)(A) (2005)), which provides: "In the case of a Class A crime, the court shall set a definite period not to exceed 30 years."

trial on the heinousness of Schofield's conduct would be not required.

[¶3] During the resentencing hearing, the State presented the statements of various members of the family of the victim, Logan Marr, including her aunt and mother. Schofield presented the statements of her husband and oldest son. Schofield also spoke at the sentencing hearing, stating that she "accept[s] responsibility for Logan's death." Schofield also presented, for comparison purposes, final sentences handed down in other child manslaughter cases. Finally, she asked the court to consider her lack of a criminal history and threat posed by her in the future.

[¶4] Prior to handing down the sentence, the court noted the difficulty in applying the facts, and therefore, the sentences of other child manslaughter cases because the facts and circumstances of each case differ. The court also noted that the final sentences handed down in these other child manslaughter cases ranged from eight to ten years, with five to between seven and eight years unsuspended, but that many of these sentences were handed down prior to the enactment of 17–A M.R.S. § 1252(5–B) (2005).[3] The court then proceeded to set Schofield's basic sentence pursuant to the first step of the sentencing process, 17–A M.R.S. § 1252–C(1) (2005):

I previously stated that this case is most serious, and I believe that here

today. In fact, I believe [this case] meets common definitions of heinous and those are defined as—you can find in a dictionary as, hateful or shockingly evil, enormously and flagrantly criminal, abominable, very bad or wretched.

In order to impose a sentence in excess of 20 years, that is a determination to be made by a jury if requested by the defendant. However, it does not mean this Court cannot express its opinion of the defendant's conduct.

There may be some question as to the exact sequence of events, but it is clear that the defendant in a knowing violation of department rules physically restrained Logan in the most restrictive manner. It wasn't just restraint, it was to silence her as well.

There are other cases involving children's death and serious injury, and some of those show evidence of prior abuse; but the death-producing conduct in those matters occurred in a brief moment.

Here the asphyxiation with a full restraint and gag on her mouth and a partial occlusion of her nostrils ... could only mean death was slow and agonizing with substantial conscious suffering, in some ways it can be equated to torture. Even if Miss [sic] Schofield found it necessary to restrain Logan, why did she have to encase her head in duct

---

**3.** Title 17–A, section 1252(5–B) was enacted by P.L. 1999, ch. 536, § 2 (effective August 11, 2000). This section provides:

In using a sentencing alternative involving a term of imprisonment for a person convicted of the ... manslaughter ... of a child who had not in fact attained the age of 6 years at the time the crime was committed, a court shall assign special weight to this objective fact in determining the basic term of imprisonment as the first step in the sentencing process. The court shall assign special weight to any subjective vic-

tim impact in determining the maximum period of incarceration in the 2nd step in the sentencing process. The court may not suspend that portion of the maximum term of imprisonment based on objective or subjective victim impact in arriving at the final sentence as the 3rd step in the sentencing process. Nothing in this subsection may be construed to restrict a court in setting a sentence from considering the age of the victim in other circumstances when relevant.

17–A M.R.S. § 1752(5–B) (2005).

tape, close the door, turn the radio up, or at least check on her breathing before leaving her alone? The defendant, as is noted in her personnel records, had to do it her way.

This case is as serious as it was three years ago and that hasn't changed. The Court believes that a sentence of 20 years—a base sentence of 20 years is appropriate and the Court fixes the base sentence at 20 years. And this includes the special weight or special consideration that has been required by the Legislature for causing the death of a child under the age of six.

[¶ 5] Next, the court considered the mitigating and aggravating factors to arrive at Schofield's maximum sentence pursuant to 17–A M.R.S. § 1252–C(2) (2005). As for mitigating factors, the court noted that Schofield does not have a prior criminal record and that she is unlikely to offend in the future. The court went on to state:

In her support, Sally wanted to do right for her children; but, on the other side, it had to be her way.

I am aware that sentencing of a defendant in any criminal case, and this one perhaps more than others, brings suffering and misery to the families of a defendant, but that is also true of both parties and the one who has lost a family member.

The defendant's acceptance of responsibility here I believe is still a step away from acknowledgement that she caused Logan's death.

All in all, I believe that the aggravating and mitigating circumstances equal out, and the sentence will remain at 20 years.

[¶ 6] The court next turned to the third step of the sentencing analysis, a determination of whether to suspend any portion of the maximum sentence and impose a period of probation pursuant to 17–A

M.R.S. § 1252–C(3) (2005). The court suspended three years of the maximum sentence and placed Schofield on four years probation to assist her in her return to society and allow for supervision of her compliance with the special conditions of probation placed upon her.

[¶ 7] We granted Schofield leave to appeal her sentence. *See* 15 M.R.S. § 2152 (2005); M.R.App. P. 20(g), (h).

## II. DISCUSSION

### A. Basic Period of Incarceration

[¶ 8] Schofield makes several arguments concerning her sentence. She first challenges the basic period of incarceration. We review the imposition of the basic sentence de novo for a misapplication of principle. *State v. Soucy,* 2006 ME 8, ¶ 11, 890 A.2d 719, 723. "[W]e review the sentence irrespective of the sentencing court's findings," *State v. King,* 1998 ME 60, ¶ 15, 708 A.2d 1014, 1018, but it is not enough that we "might have passed a different sentence, rather it is only when a sentence appears to err in principle that we will alter it," *State v. Hallowell,* 577 A.2d 778, 781 (Me.1990).

[¶ 9] At step one, the sentencing court sets the defendant's basic period of incarceration by referring to the nature and seriousness of the crime. 17–A M.R.S. § 1252–C(1); *State v. Sweet,* 2000 ME 14, ¶ 11, 745 A.2d 368, 372. "This principle requires the sentencing judge to place a defendant's conduct along a continuum for the type of criminal conduct involved in order to determine which act justifies the imposition of the most extreme punishment." *State v. Wilson,* 669 A.2d 766, 768 (Me.1996) (quotation marks omitted); *see also State v. Berube,* 1997 ME 165, ¶ 3, 698 A.2d 509, 511. Moreover, at this step, the sentencing court is required to give "special weight" to the victim's age when the

victim is under the age of six and the defendant has been convicted of manslaughter. *See* 17–A M.R.S. § 1252(5–B).

■ [¶ 10] Schofield argues that the court misapplied principle in setting her basic period of incarceration because in imposing a basic sentence of twenty years, the court was required to compare the facts of her crime against all possible ways of committing the crime and find that her actions were the worst possible way of committing manslaughter. Schofield, however, misperceives the sentencing court's undertaking.

■■ [¶ 11] As we noted above, when the sentencing court sets the basic period of incarceration, it is required to "measure the defendant's conduct on a scale of seriousness against all possible means of committing the crime in order to determine which acts deserve the most punishment." *Berube*, 1997 ME 165, ¶ 3, 698 A.2d at 511 (quotation marks omitted). This means that when the defendant's sentence is being set within the so-called lower tier (zero to twenty years), the court must attribute a value of seriousness to the defendant's conduct and note where the defendant's crime ranks in terms of seriousness when it is compared to the seriousness of other means of committing the same crime. *See State v. Corrieri*, 654 A.2d 419, 423 (Me. 1995); *State v. Lewis*, 590 A.2d 149, 151 (Me.1991). Contrary to Schofield's argument, at step one, the sentencing court is not required to elucidate all the possible means by which the defendant's crime may be committed, find which method of commission is worse than the defendant's or which method is the worst possible way of committing the crime, and then assign the basic sentence according to where the de-

fendant's conduct falls on that spectrum. *See State v. Cobb*, 2006 ME 43, ¶¶ 11, 26, 895 A.2d 972, 976, 979 (noting, with approval, that the sentencing court compared the seriousness of the defendant's crime against other means of commission and it did not misapply principle in setting the basic period of incarceration at twenty years). Likewise, this means of comparison does not require the sentencing court, when setting the defendant's basic sentence in the range of zero to twenty years, to find that the defendant's conduct constituted the worst possible means of committing the crime or that it was the most heinous possible. Instead, when the court imposes a basic sentence at or near twenty years, it does not misapply principle if it finds that the defendant's conduct is "most serious" as compared to other means of committing the crime within that same range. *See Lewis*, 590 A.2d at 151.

[¶ 12] Here, the sentencing court did exactly what Schofield argues that it did not do: it compared the seriousness of her conduct against the seriousness of other ways in which the crime of manslaughter could be committed. In so doing, the court opined that death by asphyxiation set this case apart from other child manslaughter cases because it meant that Logan's death was slow and accompanied by "substantial conscious suffering," and could be equated to torture. The court thus found Schofield's actions to be "most serious." Moreover, the court looked to section 1252(5–B) and gave special consideration to the fact that Logan was under the age of six. In light of the foregoing, we conclude that the sentencing court did not misapply principle in setting Schofield's basic sentence at twenty years.[4]

---

4. The other arguments Schofield makes to challenge her basic period of incarceration do not merit discussion.

## B. Aggravating and Mitigating Factors

[¶ 13] Schofield also contends that the sentencing court abused its discretion when it considered her aggravating and mitigating factors. At the second step of the sentencing analysis, the sentencing court determines the maximum period of incarceration by considering relevant aggravating and mitigating factors. 17–A M.R.S. § 1252–C(2). "The purpose of the second sentencing step is to allow the court to appropriately individualize each sentence." *State v. Gray*, 2006 ME 29, ¶ 13, 893 A.2d 611, 616 (quotation marks omitted). We review the sentencing court's consideration of aggravating and mitigating factors for an abuse of discretion. *State v. Pfeil*, 1998 ME 245, ¶ 18, 720 A.2d 573, 578. "Such abuse may occur when a material factor deserving significant weight is ignored." *State v. MacDonald*, 1998 ME 212, ¶ 17, 718 A.2d 195, 200 (quotation marks omitted).

[¶ 14] Mitigating factors include, among other things, a lack of prior criminal conduct, remorse, and any other factor that points to the defendant's "favorable prospect of rehabilitation or a lesser likelihood of reoffense." *Berube*, 1997 ME 165, ¶ 13, 698 A.2d at 514. Aggravating factors include, among other things, presence of a prior criminal record, lack of remorse, the need to protect the public, subjective impact of the crime on the victim, and the existence of factors indicating a likelihood of reoffending. *See Gray*, 2006 ME 29, ¶ 13 n. 3, 893 A.2d at 616; *Berube*, 1997 ME 165, ¶ 13, 698 A.2d at 514. In child manslaughter cases involving a victim who was not yet six years old, the Legislature has mandated that at this step, the sentencing court "shall assign special weight to any subjective victim impact in determining the maximum period of incarceration." 17–A M.R.S. § 1252(5–B).

[¶ 15] The sentencing court found the aggravating and mitigating factors to be in equipoise. As for the aggravating factors, the court noted Schofield's lack of remorse and inability to accept responsibility for her criminal actions, her need to do things "her way," as well as the impact of the crime on Logan's family. As for mitigating factors, the court noted that Schofield does not have a history of prior criminal conduct, she is not likely to reoffend, and she "wanted to do right for her children." In light of the court's analysis, we disagree with Schofield that the court exceeded the bounds of its discretion in weighing the aggravating and mitigating factors. First, the court's finding that Schofield had to have control over the situation leading to Logan's death is not inconsistent with its finding that she had not yet acknowledged her responsibility for causing Logan's death. Second, Schofield is incorrect that the sentencing court did not consider her lack of a criminal record. What Schofield appears to be arguing is that the court did not assign enough weight to this factor. Although another court may have assigned more weight to this factor, it is apparent that the court actually considered it, but was not persuaded that it was "sufficiently mitigating so as to either outweigh the aggravating factors or justify a reduction from the basic sentence." *Gray*, 2006 ME 29, ¶ 14, 893 A.2d at 617. Based on the sentencing court's analysis and because of the "special weight" to be assigned at this stage pursuant to section 1252(5–B),[5] the

---

**5.** The sentencing court did not explicitly note the special weight that the section 1252(5–B) factor played in its consideration of aggravating and mitigating factors. Considering the existence of the mitigating factors in Schofield's favor, it is reasonable to conclude that the court made this a part of its calculation, albeit implicitly. *Cf. State v. Shulikov*, 1998

court did not abuse its discretion when it found Schofield's aggravating and mitigating factors to be in equipoise and in setting Schofield's maximum sentence at twenty years.[6]

The entry is:

Judgment affirmed.

ME 111, ¶ 27, 712 A.2d 504, 511 (concluding that the sentencing court did not exceed the bounds of its discretion by implicitly rejecting the defendant's bad health as a mitigating factor in his favor). In any event, although the sentencing court should have noted the weight it assigned pursuant to section 1252(5–B), its failure to do so cannot be said to have prejudiced Schofield.

6. We do not address the third step of the court's sentencing analysis by which it determined Schofield's final sentence, *see* 17–A M.R.S. § 1252–C(3) (2005), because Schofield does not assign any specific error to it in her brief.